## STATE OF CONNECTICUT *v.* EUGENE WILLIAMS (14451)

O'Connell, Foti and Hennessy, Js.

Argued January 24—officially released April 30, 1996

*Susan M. Hankins*, assistant public defender, for the appellant (defendant).

*Paul J. Ferencek*, assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *Robin Lipsky*, assistant state's attorney, for the appellee (state).

O'CONNELL, J. The defendant appeals from the judgment of conviction, following a jury trial, of three counts of sale of narcotics in violation of General Statutes § 21a-277 (a). The defendant's sole claim on appeal is that prosecutorial misconduct deprived him of a fair trial. We reverse the judgment of conviction and order a new trial.

The jury could reasonably have found the following facts. On February 23, 1995, Sergeant Dennis Coyle of the statewide narcotics task force, in conjunction with law enforcement officers from the Waterbury police department and the Federal Bureau of Investigation (FBI), conducted an undercover operation in the north end of Waterbury in which police officers, posing as

buyers, purchased narcotics from street dealers. The operation targeted several areas known for heavy drug traffic.

During the late afternoon, Detective Nicholas DeMatteis of the Waterbury police department and FBI Agent William Reiner, Jr., were in an undercover vehicle in the vicinity of Hawkins and Adams Streets. Both officers observed what they characterized as drug related activity. Their attention was specifically drawn to a black male of average build, wearing a striped jacket with a blue hooded sweatshirt. Because DeMatteis believed that this man was conducting a drug transaction, he directed statewide narcotics task force agents John Cole, Laura Wigglesworth, and Thomas Bennett to make purchases from any persons selling drugs in that area.

Cole drove down Hawkins Street and spotted the same individual standing on the sidewalk with several other men. The defendant approached Cole's vehicle. Cole asked him, "Who's got those twenties," referring to $20 bags of crack cocaine. The defendant handed Cole two small green plastic bags containing a white rock-like substance that Cole recognized as crack cocaine. Cole gave the defendant $40 and drove off. Wigglesworth and Bennett then drove to the same location, where the defendant approached their car and handed each officer one bag of the same substance. Following these transactions, DeMatteis and Reiner drove down Hawkins Street to get a closer look at the defendant.

Thereafter, all of the participating officers met with Coyle a few blocks away. Cole, Wigglesworth and Bennett each turned over the green plastic bags to Coyle, who secured them as evidence and sent them to the state toxicology laboratory. Analysis revealed that each bag contained nonsalt cocaine. After a jury trial, the defendant was convicted of three counts of sale of

narcotics and sentenced to concurrent fifteen year prison terms on each count.

The defendant claims that misconduct by the assistant state's attorney prosecuting the case deprived him of a fair trial in violation of the due process clause of the fourteenth amendment to the United States constitution. We agree. The cumulative pattern of prosecutorial misconduct, frequent and severe, falls into six categories of proscribed behavior: (1) expressing opinions as to the credibility of witnesses; (2) arguing to the jury that in order to acquit the defendant it must necessarily find that the officers testifying for the state committed perjury; (3) testifying as an expert witness; (4) misallocating the burden of proof; (5) appealing to the emotions, passions, and prejudices of the jurors; and (6) deliberately violating the rulings on a motion in limine.

I

A prosecutor may not express his own opinion, either directly or indirectly, as to the credibility of his witnesses. *United States* v. *Modica,* 663 F.2d 1173, 1178–79 (2d Cir. 1981); *United States* v. *Drummond,* 481 F.2d 62, 63–64 (2d Cir. 1973); *State* v. *Williams,* 204 Conn. 523, 541–44, 529 A.2d 653 (1987). Similarly, counsel may not submit to a jury that a witness has testified truthfully. *State* v. *Oehman,* 212 Conn. 325, 336, 562 A.2d 493 (1989). A prosecutor's voucher for the credibility of his witnesses is dangerous primarily because "the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence." *United States* v. *Young,* 470 U.S. 1, 18–19, 105 S. Ct. 1038, 84 L. Ed. 2d 1 (1985).

The defendant complains of repeated instances in which the prosecutor, despite several defense objections and subsequent admonishments from the trial

court, vouched for the credibility of her witnesses:[1] "I would submit to you [the jury] that all of these officers are extremely honest"; "I would submit to you that there's no evidence that they testif[ied] dishonestly"; "Detective DeMatteis was very honest with you"; "[the officers] all told you honestly what they saw." The prosecutor also told the jury that the state's attorney's office would not "stand by" and let a state's witness testify falsely as to the defendant's identity.

The state argues that the defendant induced the collective responses from the prosecutor when he first stated that DeMatteis had a motive to lie and called him a "bald-faced liar." The response to this comment, however, should have been limited to DeMatteis. The prosecutor improperly expressed her opinions as to the credibility of all the officers in numerous other instances of vouching. By personally vouching for the integrity of each of her identification witnesses, the prosecutor improperly put the weight of her office into the balance against the defendant.

## II

Prosecutors have been admonished to avoid statements to the effect that, if the defendant is innocent, government agents must be lying. *United States* v. *Richter,* 826 F.2d 206, 208 (2d Cir. 1987); *People* v. *Yant,* 75 App. Div. 2d 653, 654, 427 N.Y.S.2d 270 (1980) (holding prosecutor improperly argued that to acquit defendant jury would have to find that officers testifying for state had committed perjury).

The defendant cites several comments in which the prosecutor argued that, in order to acquit the defendant,

[1] Providing an exhaustive list of the misconduct that pervaded this trial would be impractical; we have included a representative sample of the misconduct alleged in some of the defendant's claims. See *State* v. *Williams,* supra, 204 Conn. 523. The defendant's additional claims of prosecutorial misconduct are fully discussed in the dissent that follows.

the jury must necessarily believe that her witnesses were perjuring themselves: "And think about the witnesses you have to compare. You have six officers, six officers who don't have an interest in the case, six officers who don't have this type of a record." "Is it reasonable that six officers [would] swear under oath they know absolutely that [this] is the man, if they weren't absolutely certain? Absolutely not." "I submit to you that in order to believe the defendant's version, what he's asking you to do is believe that these officers, six officers, would come in and for no reason whatsoever lie and perjure themselves and subject themselves to all types of penalties."

The jury was not required to find that the officers intentionally lied in order to acquit the defendant, nor was it required to believe the defendant's testimony in order to doubt the accuracy of the state's identification witnesses. Thus, the prosecutor improperly suggested that a finding for the defendant's version of the facts was tantamount to a finding that the police officers had committed perjury.

### III

A prosecutor, in fulfilling his duties, must confine himself to the evidence in the record. *State* v. *Binet*, 192 Conn. 618, 631, 473 A.2d 1200 (1984). "[A] lawyer shall not . . . [a]ssert his personal knowledge of the facts in issue, except when testifying as a witness." ABA Model Code of Professional Responsibility DR 7-106 (C) (3) (1980). Statements as to facts that have not been proven amount to unsworn testimony, which is not the subject of proper closing argument. *State* v. *Williams*, supra, 204 Conn. 544.

At trial, the defendant asked why the outsides of the plastic bags bought by undercover officers had not been tested for fingerprints. The state did not introduce an expert to testify that testing the bags would have been

impossible. Instead, the prosecutor substituted her opinion as to the feasibility of such testing for that of an expert witness: "Well, now, the drugs [in the bag] have already been tested, so how many people do you think have handled this one little envelope. I can tell you a lot of people have handled it. You think we're going to get fingerprints on this two weeks ago when the defendant just decided to give the name [Robert Arline as the man who sold the drugs]."[2] The prosecutor improperly testified as to the feasibility of fingerprint testing instead of presenting a witness to testify that the manner in which the police handled the plastic bags would have rendered fingerprint testing impossible or inconclusive.

## IV

It is axiomatic that the state must prove every fact necessary to constitute the crime with which a defendant is charged beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). Once an alibi defense is raised in Connecticut, the state bears the burden of disproving it. *State v. Bryant*, 202 Conn. 676, 703, 523 A.2d 451 (1987).

The defendant raised an alibi defense at trial and also argued that Robert Arline, a known drug dealer, was the man in the surveillance photographs taken by the undercover officers. The defendant presented witnesses to corroborate his identification of Arline. In so doing, the defendant showed the surveillance photographs, provided to him by the state, to the testifying witnesses.

Despite the defendant's objections that he did not have the burden of proving his alibi defense and the trial court's rulings that the state was misrepresenting

---

[2] We note that this argument is also contrary to the evidence adduced by the state that the officers put the plastic bags inside envelopes immediately following the transactions.

its burden of proof to the jury, the prosecutor repeatedly maintained that the defendant purposefully and selectively showed unclear surveillance photographs to the jury because he had no better evidence in support of his alibi and stated: "I'm going to submit to you that the reason they chose to submit the [photographs] they did is because they're the ones that are the most difficult to really see . . . ." The prosecutor stated further: "I'm going to submit to you . . . that counsel is really stretching here, and the reason he's stretching is because he doesn't really have anything else to go with . . . ." She also stated that the defendant has failed to present "any evidence to support that he was anywhere else." The prosecutor improperly attempted to distort the state's burden of proof and to allocate to the defendant the burden to disprove his alibi.

V

A prosecutor may not appeal to the emotions, passions, and prejudices of the jurors. *United States* v. *Modica,* supra, 663 F.2d 1181; *State* v. *Couture,* 194 Conn. 530, 564–65, 482 A.2d 300 (1984). Such an appeal should be avoided because it "invites the jury to decide the case, not according to a rational appraisal of the evidence, but on the basis of powerful and irrelevant factors which are likely to skew that appraisal." *State* v. *Williams,* supra, 204 Conn. 546. Similarly, a prosecutor should not inject extraneous matters into the case that divert the jury from its duty to decide the case solely on the evidence. Id., 547; 1 A.B.A., Standards for Criminal Justice (2d Ed. 1980) c. 3, standard 3-5.8 (d).

The defendant complains of a series of comments in which the prosecutor argued that the officers risked their personal safety to secure the defendant's arrest: "You heard that [the officers] were putting their lives on the line. I think as just members of society, I think your common sense would tell you that they're putting

their lives on the line." Undaunted by defense objection and the trial court's ruling that there was no evidence in the record to support a finding that the officers were in any danger, the prosecutor nonetheless immediately repeated the remarks: "You heard their safety was always a concern . . . this isn't, again, fun and games. This is real life, ladies and gentlemen, real life."

By diverting the jurors' attention to matters that were irrelevant and to those not supported by the evidence, the prosecutor improperly asked the jurors to determine the defendant's guilt with the emotional predicate that they were "just" and good members of society for whom the officers were "putting their lives on the line."

## VI

Pursuant to a motion in limine, the trial court specifically ruled that state's witnesses were precluded from (1) referring to previous investigations of the defendant, and (2) referring to *how* they knew the defendant.

The defendant asserts that the prosecutor repeatedly and flagrantly violated the motion in limine orders. In perhaps the most conspicuous violation, the prosecutor asked DeMatteis how many times he had previously dealt with the defendant. Additionally, in her summation, the prosecutor argued: "You heard from Detective DeMatteis that he knows this individual and you heard that he knows him from his work. Ladies and gentlemen, where does he work? He works for the Waterbury police department. What unit does he work in? He works in the tactical narcotics team." Undaunted by the defendant's objection and the trial court's curative instruction, the prosecutor immediately argued: "You heard that Detective DeMatteis works for the Waterbury police department. You heard *that's* how he knows this individual." (Emphasis added.) These remarks illustrate that the prosecutor deliberately violated the trial court's specific rulings on the motion in limine.

## VII

Our review of the record indicates that the defendant did not properly preserve some of the claims at trial for which he now seeks review. Because the defendant objected and requested curative instructions with enough frequency to alert the trial court to the persistent misconduct, however, and because the record adequately supports that he has been deprived of a fundamental constitutional right and a fair trial, we will review the unpreserved portions. *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989); *State* v. *Evans*, 165 Conn. 61, 70, 327 A.2d 576 (1973); see *State* v. *Pelletier*, 196 Conn. 32, 34, 490 A.2d 515 (1985). Our review of the record discloses that the multiple instances of blatantly egregious conduct now challenged do not constitute an isolated instance of misconduct, but a pattern repeated through the trial.

The defendant claims that egregious prosecutorial misconduct deprived him of his constitutional right to a fair trial under the due process clause of the federal constitution. In analyzing this claim, we ask whether the prosecutor's conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process. *Darden* v. *Wainwright*, 477 U.S. 168, 181, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986), quoting *Donnelly* v. *DeChristoforo*, 416 U.S. 637, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1974) . . . . We do not focus alone, however, on the conduct of the prosecutor. The fairness of the trial and not the culpability of the prosecutor is the standard for analyzing the constitutional due process claims of criminal defendants alleging prosecutorial misconduct. *State* v. *Palmer*, 196 Conn. 157, 163, 491 A.2d 1075 (1985), quoting *State* v. *Ubaldi*, 190 Conn. 559, 562, 462 A.2d 1001, cert. denied, 464 U.S. 916, 104 S. Ct. 280, 78 L. Ed. 2d 259 (1983) . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Williams*, supra, 204 Conn. 539–40.

In determining whether prosecutorial misconduct was so serious as to amount to a denial of due process, we focus on several factors: (1) the extent to which the misconduct was invited by defense conduct or argument; (2) the severity of the conduct; (3) the frequency of the conduct; (4) the centrality of the misconduct to the critical issues of the case; (5) the strength of the curative instructions adopted; and (6) the strength of the state's case. Id., 540.

We have carefully examined the record and conclude that the course of prosecutorial misconduct was in deliberate violation of those matters explicitly and implicitly precluded by the ruling on the motion in limine. With the exception of a response to a single comment, the misconduct was not invited by the defendant's conduct or triggered by the defendant's argument. The misconduct bore directly on the critical issue of the defendant's credibility and the believability of his alibi defense. The prosecutor's conduct was frequent and severe, and she ignored repeated warnings from the trial court.

We note that the court gave some of the defendant's curative instructions and ordered some of the objectionable matter stricken from the record. The cumulative effect of the prosecutor's misconduct throughout the trial was so serious, however, that no curative instruction could reasonably have been expected to remove its prejudicial impact. State v. Fullwood, 194 Conn. 573, 585, 484 A.2d 435 (1984). In this case, the curative measures utilized by the court, consisting of occasional directions to the jury to disregard the remarks of the assistant state's attorney and of brief charges to the jury were insufficient to eliminate the accumulated harm created by the course of prosecutorial misconduct. Because of the severity and frequency of the misconduct, this is not a situation where we can safely rely on the presumption that the jury will follow the court's

instructions. See *State* v. *Williams*, supra, 204 Conn. 549. Although we generally give great weight to a trial court's effort to eliminate prejudice through a curative instruction, " '[i]f you throw a skunk into the jury box, you can't instruct the jury not to smell it.' " *United States* v. *Garza*, 608 F.2d 659, 666 (5th Cir. 1979), quoting *Dunn* v. *United States*, 307 F.2d 883, 886 (5th Cir. 1962).

This is not a case in which the state's evidence is so strong that we can say that the misconduct constituted harmless error. The defendant steadily maintained that Arline was the person in the surveillance photographs and disputed all of the state's identification testimony. The defendant's credibility and the believability of his alibi defense were thus pivotal issues for the jury's determination. The pervasive misconduct directed at the defendant's credibility and the veracity of his alibi defense was pronounced and persistent, and we cannot dismiss its cumulative effect on the jury as inconsequential. We conclude that the defendant was denied a fair trial in violation of his federal constitutional right to due process of law.

The judgment is reversed and the case is remanded for a new trial.

In this opinion HENNESSY, J., concurred.

FOTI, J., dissenting. I respectfully disagree that the defendant was denied a fair trial under the fourteenth amendment to the United States constitution. My review of the record reveals that the alleged prosecutorial misconduct was neither intentional nor flagrant, was not deliberately designed to undermine the authority of the court and did not rise to the level of substantial prejudice that justifies reversal. While the challenged remarks and conduct are many, I do not discern a pattern of prosecutorial misconduct repeated throughout the trial.

The defendant identifies seven separate instances where he alleges the prosecutor violated the court's ruling on the motion in limine. I address each of these alleged violations separately.[1]

I

The defendant claims that the prosecutor violated the court's evidentiary injunction regarding "operation waterbase"[2] by directing improper questions to Sergeant Dennis Coyle and Detective Laura Wigglesworth and from the elicited testimony of Coyle. My examination of the record reveals that the prosecutor's questions to these witnesses did not violate the court's order prohibiting the prosecution from eliciting testimony about operation waterbase and the murder that prompted that undercover operation. The court sustained the defendant's objections on the basis of relevancy and responsiveness. The court did not view this line of inquiry as undermining its ruling on the motion in limine. The defendant suffered little or no prejudice, as the court either ordered the testimony stricken or sustained the objections to the questions in each of the six instances.[3]

---

[1] While I recognize that the majority has not specifically addressed some of these alleged violations or determined them to be improper conduct, I nevertheless must address each for purposes of concluding that there was no pattern of prosecutorial misconduct.

[2] The undercover narcotics investigation was known as operation waterbase.

[3] The six instances are as follows: (1) on direct examination of Coyle:

"[Prosecutor]: But you were working on that day?

"[Coyle]: Yes.

"[Prosecutor]: What was your capacity on that day?

"[Coyle]: I was doing an undercover operation in the north end of Waterbury. What I was doing, we had a major investigation—

"[Defense Counsel]: I'm going to object, Judge, it's not responsive.

"The Court: Just one moment. Let's hear you.

"[Defense Counsel]: She asked him what he was doing; he said he was working undercover in the north end of Waterbury; now he's going beyond that.

"The Court: I agree. I'll strike what goes beyond."

## II

The defendant next claims that a violation of the court's order took place during the prosecutor's redirect

(2) on direct examination of Coyle:

"[Prosecutor]: Now, when you indicate—Strike that. How did it come that you were working with people not only from your office, but from Waterbury, as well as the [Federal Bureau of Investigation]?

"[Defense Counsel]: Objection.

"The Court: Counsel approach the bench, please.

[Bench conference]

"[Prosecutor]: I've informed him that he's not allowed to—

"The Court: I know what that answer is going to be.

"[Prosecutor]: I've informed him that in terms of my questions he's not to indicate wiretap. What I'm getting at is that based upon the number of complaints they had comprised a big team in order to go out and strike—

"The Court: Let's stay to this case.

[Bench conference ends.]

"The Court: I'll sustain the objection based on the bench conference."

(3) on direct examination of Coyle:

"[Prosecutor]: Now, you indicated that you were going to a specific area, you indicated the north end of Waterbury; were there specific areas that were targeted on that day?

"[Coyle]: Yes. We had targeted, as part of an investigation, certain retail outlets which we considered part of an organization—

"[Defense Counsel]: I'm going to object, Judge, it's not responsive to her question. She asked—If you want me to go on—

"The Court: Sure, go ahead.

"[Defense Counsel]: Where did you go? He answered, he went to the north end. Now he's going to give a mini seminar; I don't think it's proper.

"The Court: I'll sustain the objection. Put another question to him."

(4) on direct examination of Coyle:

"[Prosecutor]: As supervisor of this undercover operation, were specific individuals targeted?

"[Defense Counsel]: Objection, Your Honor.

"The Court: Sustained."

(5) on direct examination of Wigglesworth:

"[Prosecutor]: In terms of the operation, where—would you say this was the beginning or the end, where was it in terms of the operation itself?

"[Defense Counsel]: Objection.

"The Court: Sustained."

(6) on direct examination of Wigglesworth:

"[Prosecutor]: So it was an ongoing operation?

"[Wigglesworth]: It was an ongoing—

"[Defense Counsel]: Objection.

"The Court: Sustained."

examination of Detective Nicholas DeMatteis. On cross-examination of DeMatteis, the defendant elicited that at the time of the undercover operation DeMatteis was named as a defendant in a civil rights suit filed by the defendant against DeMatteis and the Waterbury police department. On redirect, the prosecutor conducted the following query of DeMatteis regarding the nature of the suit.

"[Prosecutor]: Detective DeMatteis, let me start with the last question. Counsel asked you about the civil suit. He asked you whether or not it dealt with false arrest. What does the civil suit specifically stem from?

"[Defense Counsel]: Objection.

"[Prosecutor]: Counsel has addressed the issue, Your Honor.

"The Court: I'm not going to allow any further inquiry into it. I'll sustain the objection. It's going to take us into a collateral matter that I don't think is necessary further for the trial of this case.

"[Prosecutor]: How many times have you had occasion to have dealings with this defendant?

"[Defense Counsel]: Objection, Your Honor.

"The Court: I'm not obliged to rule.

"[Defense Counsel]: I'm sorry. It's much more prejudicial than probative.

"The Court: Sustained."

From that line of questioning and the court's related rulings, I can discern neither prejudice to the defendant nor a violation of the court's ruling on the motion in limine, prohibiting evidence of the defendant's prior police record.

### III

The defendant next asserts that the prosecutor twice improperly injected evidence of the defendant's prior police record by eliciting testimony from two witnesses, Agent William Reiner, of the Federal Bureau of Investigation, and Robert Arline, that the neighborhood was a known narcotic trafficking area. The defendant argues that the following portion of the prosecutor's direct examination of Reiner is improper.

"[Prosecutor]: Why did you go to that specific location?

"[Reiner]: Because of the past dealings from that area.

"[Defense Counsel]: Objection, Your Honor. I think it's not responsive. It's not a proper question. I think he's already answered why he went there, and it's just repetitive. It's cumulative.

"The Court: I'll sustain the objection.

"[Prosecutor]: Moving on, Agent Reiner. What, if anything, happened at that date and time?

"[Reiner]: On that date, myself and Detective Nicholas DeMatteis were driving in my undercover vehicle, which is a Nissan Pathfinder with dark, tinted windows. We proceeded down Hawkins Street, observing several known drug dealers or . . .

"[Defense Counsel]: Objection, Your Honor. I'd ask that that be stricken.

"The Court: It may be stricken."

The defendant contends that on the following day, the prosecutor again improperly attempted to introduce evidence of his prior police record while conducting the direct examination of Arline. The relevant portion of the testimony follows.

"[Prosecutor]: Now, you lived in that area. Is that area, based on your observations having lived there, would you consider that area to be a heavy narcotic area?

"[Defense Counsel]: Objection, Your Honor. That is not probative of anything here. It's certainly more prejudicial than probative.

"The Court: Sustained."

The defendant claims that the prosecutor's line of inquiry circumvented the trial court's ruling prohibiting evidence of his prior police record and, therefore, prejudiced him by reinforcing the state's theory that he was a known drug dealer who frequented drug selling areas. I see no merit based on the prosecutor's line of inquiry in these segments of the transcripts to the defendant's claim.

## IV

The defendant maintains that the prosecutor improperly injected the issue of the defendant's character before the jury. The prosecutor's cross-examination of the defendant produced the following testimony.

"[Prosecutor]: You said on that specific day you didn't sell any drugs. Is that your testimony?

"[Defendant]: I was nowhere around there on Adams Street that day when they say I was there.

"[Prosecutor]: So, is it just your testimony that on that day you didn't sell any drugs?

"[Defense Counsel]: Objection, Your Honor.

"[Defendant]: No, I said . . .

"[Defense Counsel]: Objection. There's an objection.

"The Court: One moment. Do you want to state a reason for your objection?

"[Defense Counsel]: Yes. Objection because it's immaterial as to—I think it's going into an inflammatory area.

"The Court: I agree. Sustained. I caution you with regard to these questions."

The defendant claims that the question posed by the prosecutor implied that on other days he had sold drugs at that location. The transcript, of course, cannot show whether any words were emphasized in the presentation and articulation of the questions, and no argument is made of an improper inflection on any word or combination of words. While the question was inappropriate at best, it neither deprived the defendant of a fair trial, nor so intentionally violated a court order as to require other sanctions.[4]

## V

While cross-examining the defendant about his two unnamed felony convictions from the state of New York,[5] the prosecutor looked at a piece of paper about three to four feet in length at counsel table. The defendant claims this breached the court's ruling because it was his "rap sheet." The trial court denied the defendant's motion for a mistrial. The record does not disclose whether the jury knew what the prosecutor was reviewing.

In denying the defendant's motion for a mistrial, the trial court stated: "Well, it's pretty hard for me to deter-

---

[4] The court repeatedly instructed the jury that evidence stricken from the record could not be considered by them. The court also advised the jury that there was no evidence in the record that the defendant is a known drug dealer. The court informed the jury that the attorneys were not witnesses and that the questions they asked were not to be considered as evidence. The jury is presumed to have followed the court's instructions. *State* v. *Moye*, 199 Conn. 389, 396, 507 A.2d 1001 (1986).

[5] The defendant, on direct examination, admitted that he had been convicted of two unnamed felonies in New York.

mine what, if anything, the jury saw other than a print-out that was on the table. So, based on the existing record, I'll deny the motion for mistrial. I don't think the jury was tainted." In finding that the prosecutor's action did not impair the defendant's right to a fair trial, the trial court saw neither a constitutional due process violation nor a violation of the court's order. Further, the defendant can only speculate as to prejudice.

## VI

The defendant also alleges that the prosecutor violated the court's order on the motion in limine regarding the defendant's prior police record during final argument. He argues that the prosecutor improperly inferred that Arline, the subject of the defendant's third party culpability defense, knew the defendant as a drug dealer, and that DeMatteis knew the defendant from his particular work as a narcotics officer. The defendant asserts that there was no evidence presented to support such inferences, and that any such evidence would not have been permitted because it would have involved prior police investigations and arrests of the defendant.

At trial, several defense witnesses testified that the defendant often visited the Hawkins Street area because his children lived in that area. When the defendant testified, he viewed certain photographs taken by a law enforcement officer at the crime scene during the undercover drug buys. The defendant testified that the person in the pictures wearing a blue hooded sweatshirt, whom the officers had identified as the defendant, was actually Arline, and that he had known Arline because Arline frequented the Hawkins Street area. Arline was called by the state in rebuttal and testified that he had known the defendant for five years, and that he frequently saw the defendant in the Hawkins Street area.

In her main summation, the prosecutor argued, "Who do you think the defendant is going to pick in terms of somebody who he's claiming is in that picture? And, ladies and gentlemen, think about it. They indicated to you that they knew each other. They knew each other from that area. And you heard from the officers, that's a very high narcotic area. So, who do you think is going to be there except for people who are out there selling drugs? That is the type of person that the defendant brought in. I'm not here to vouch for Mr. Arline's credibility. He may be a drug seller. We know in 1990 he was convicted for selling drugs, and that may be what he does. That's what that area is known for, and that's how he knows the defendant, from that area." Defense counsel did not object to this argument.

Later in the prosecutor's main summation, she commented: "You heard from Detective DeMatteis that he knows this individual, and you heard that he knows him from his work. Ladies and gentlemen, where does he work? He works for the Waterbury police department. What unit does he work in? He works in the tactical narcotics team." The trial court sustained the defendant's objection to this latter remark, instructed the jury to disregard it, and admonished the prosecutor.

I agree that the prosecutor's second remark was improper. The first statement may approach the fringe of impropriety, but because defendant's counsel did not object or request a curative charge, he could not have viewed the argument of the prosecutor as so prejudicial as to jeopardize his client's right to a fair trial. See *State* v. *Chase*, 199 Conn. 102, 108, 505 A.2d 712 (1986). The defendant, having elected to testify, places his credibility in issue, as does any other witness, and the prosecutor in closing argument is free to challenge the defendant's version of the facts by referring to evidence properly adduced at trial. *State* v. *Cassidy*, 236 Conn. 112, 128, 672 A.2d 899 (1996). The defendant's "alibi"

was, in effect, "I didn't do it, some other guy [Arline] did." The prosecutor was free in closing argument to review the evidence as to the identification witnesses and as to this alleged alibi defense.

I do not view the prosecutor's second remark as so serious as to require a new trial. The main issue involved identity, and, while the defendant's character was brought in inferentially and improperly during final argument, the court immediately cautioned the jury to disregard it.

## VII

Last, the defendant claims that the prosecutor improperly used her final argument to inflame the passions of the jury. During closing argument, defense counsel argued, "I think, and I would submit to you that as good people, as good citizens like I know you are, you could never convict a man on this kind of case, never. You could never convict a man on such a shabby case, and a case where the evidence is so lacking, so many holes, so many missing things. You couldn't do that as a good person or as a good citizen. You know, it sounds corny, but, it would be unAmerican. It would be unAmerican to do something like that. God forbid it happens in this case. It just wouldn't be right."

The prosecutor addressed the defendant's call for patriotism in her rebuttal argument, the pertinent segment of which follows.

"[Prosecutor]: Counsel is saying to you that, in fact, the government was somehow lax, lax in its procedures when it tried to put together its case. What I'm going to submit to you, ladies and gentlemen, is that, in fact, the government and the police department did everything that they possibly could. Now, certainly, in an ideal world, an ideal world, would we like to know who every single person in this picture is? Yes, of course.

Is that practical, ladies and gentlemen? No. You heard the testimony of the different officers. You heard that they were putting their lives on the line. I think as just members of society, I think your common sense would tell you that they're putting their lives on the line."

The trial court sustained the defendant's objection on the ground that no evidence had been introduced at trial that the officers' lives were in danger. While not perhaps invited, the remarks were nevertheless inconsequential, and satisfactorily corrected by the court.

The defendant complains that the prosecutor, during rebuttal summation, repeatedly vouched for the credibility of the police witnesses.[6] During defense counsel's final argument, he characterized the police as "young and ambitious," insinuated that they had conspired to identify the defendant falsely during a preliminary hearing, asserted that both the police and prosecutor had a reasonable doubt respecting the defendant's guilt, called DeMatteis a "bald-faced liar," suggested that he had a motive to lie, and described the power of the state and the prosecutor as "scary." I view the prosecutor's closing remarks, in response to this, as being perhaps

---

[6] The defendant points to five instances during the rebuttal summation: (1) "[The Prosecutor]: I would submit to you that all these officers are extremely honest, that they can testify as completely as they possibly can."

(2) "[The Prosecutor]: I would submit to you there's no evidence, that they did not testify dishonestly . . . ."

(3) "[The Prosecutor]: Are we all involved in some conspiracy against the defendant? I would submit to you that of course we are not, of course we are not."

(4) "[The Prosecutor]: [Defense counsel] suggests to you that Detective DeMatteis is, in his words, a bold-face liar. Well, I would submit to you, ladies and gentlemen, that there's no evidence of that. Detective DeMatteis was very honest with you."

(5) "[The Prosecutor]: Again, these officers don't work together. They were united for this one special project. They're from all different walks of the state. They all testified. They all told you honestly what they saw, what they remembered, and what they remember is that they bought drugs from the defendant. There was no doubt in their mind, no doubt whatsoever.

improper, but not comprising a pattern or being of such an egregious nature or so prejudicial as to require a new trial.[7] Our Supreme Court has stated that the linchpin for evaluating claims of improper prosecutorial argument is the fairness of the trial, rather than the culpability of the prosecutor. *State* v. *Cassidy*, supra, 236 Conn. 131.

During the defendant's closing argument, counsel argued that the state was remiss in failing to analyze the plastic bags, allegedly containing cocaine purchased by the police, for Arline's fingerprints. The defendant's counsel stated, "The man is saying it's not him. We want to lift the print. We want to compare it. They're indicating it might be Mr. Arline. We've got his fingerprint card. We'd like to rule him out. Why not fingerprint the bags? You don't have to be Matlock to come up with these things. Why not take the fingerprints? Why not request, why not at least request lab, fingerprint the bags? Then if they don't do it, you can say, hey, I made the request. You know, it's their job. Then I can get on Dr. Milzoff, but, hey, how can I do that? He's not even asked to do it. He has to do one simple thing, test for narcotics. Surprise. Surprise." The prosecutor, in her rebuttal argument, responded to this argument with the following challenged remark: "[T]hen counsel said, well, perhaps they could have taken the fingerprints two weeks ago when the defendant first brought up Mr. Arline's name. So, it's just this past two weeks because Mr. Arline's name is brought up now we're suddenly going to take fingerprints. Well, now, the drugs have already been tested, so, how many people do you think have handled this one little envelope. I can tell you a lot of people have handled it. You think we're going to get fingerprints on this two weeks ago when the defendant just decided to give the name? No, no. I

---

[7] The defendant neither requested a mistrial nor a curative instruction, but he did object to two of the five comments.

submit that argument is a smoke screen, ladies and gentlemen, a smoke screen."

The defendant's claim is not properly preserved.[8] I would not review this claim under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989), as it does not raise a question of constitutional magnitude.

Last, the defendant alleges that the prosecutor during final argument misallocated the state's burden of proof. I view this claim as being inadequately briefed because the defendant has failed to provide this court with either a legal analysis or any legal authority to support his claim. I would, therefore, not review this claim. *State* v. *Mozell*, 37 Conn. App. 574, 579–80, 657 A.2d 686, cert. denied, 234 Conn 910, 660 A.2d 355 (1995).

I conclude that none of the defendant's claims of prosecutorial misconduct, individually or taken altogether, justifies reversal of the defendant's conviction. Perhaps the record reveals the actions of an overzealous prosecutor, but I do not view her words and conduct as to have so infected the trial with unfairness as to make the conviction a denial of due process. *State* v. *Sherman*, 38 Conn. App. 371, 376, 662 A.2d 767, cert. denied, 235 Conn. 905, 665 A.2d 905 (1995).[9] My review of the record does not disclose the abundance of glaring,

---

[8] Our Supreme Court has held that the failure of defense counsel to take exception to remarks of the prosecutor, either at the time they were made or at the close of the final argument, is a waiver of the right of the defendant to press this claim as error. *State* v. *Lubesky*, 195 Conn. 475, 488 A.2d 1239 (1985).

[9] As an alternative, the defendant asks that, if we conclude that the prosecutorial misconduct was not so egregious as to deprive him of a fair trial under the fourteenth amendment to the United States constitution, we exercise our supervisory powers to vacate the judgment of conviction because the misconduct was unduly offensive to the maintenance of a sound judicial process. *State* v. *Fullwood*, 194 Conn. 574, 584, 484 A.2d 435 (1984). I do not conclude that the challenged questions or remarks were a flagrant disregard of the court's order deliberately designed to undermine the authority of the court and, therefore, that those necessitate a new trial.

outrageous prosecutorial misconduct that the defendant professes occurred during the trial, or a pattern of such misconduct throughout the trial. The minimal prejudice that the defendant may have suffered makes the sanction of reversal inappropriate.

I would affirm the judgment of the trial court.