## STATE OF CONNECTICUT *v.* MICHAEL ANCONA
### (AC 20470)

Landau, Schaller and Hennessy, Js.

Argued December 7, 2001—officially released April 9, 2002

*Jacob Wieselman*, with whom was *Michael E. Eaton*, for the appellant (defendant).

*Nancy L. Chupak*, assistant state's attorney, with whom, on the brief, was *James E. Thomas*, state's attorney, for the appellee (state).

*Opinion*

SCHALLER, J. The defendant, Michael Ancona, appeals from the judgment of the trial court, rendered after a jury trial, convicting him of fabricating physical evidence in violation of General Statutes § 53a-155, conspiracy to fabricate physical evidence in violation of General Statutes §§ 53a-48 (a) and 53a-155 (a) (2) and falsely reporting an incident in violation of General Statutes § 53a-180 (a) (3) (C). The defendant's sole claim is that the prosecutor's misconduct in closing and rebuttal arguments was so egregious that the defendant was deprived of his due process right to a fair trial. We reverse the judgment of the trial court and remand the case for a new trial.

This appeal arises out of a criminal investigation into the police tactics used to make an arrest on February 14, 1997. At that time, the defendant was a member of the Hartford police department. The jury reasonably could have found the following facts. On the evening of February 14, 1997, several officers from the Hartford police department, including the defendant, engaged in a high speed chase. Bloomfield police officers joined the pursuit after being notified that the truck being chased, which was driven by James Wilson, had entered their town. The chase ended in Bloomfield where Officer Michael Driscoll of the Bloomfield police department removed Wilson from the vehicle. As Driscoll removed Wilson, the defendant, who was standing

nearby, ducked and stepped back to avoid a blow from Wilson's hand. Several police officers, including the defendant, used force to subdue Wilson. An investigation into the police conduct followed. Reports and statements of seasoned police officers from both police departments conflicted with rookie police officers with regard to which officers were involved in subduing Wilson and the details concerning the amount of force used to subdue Wilson. Furthermore, testimony of the seasoned police officers about the incident conflicted with that of the rookie police officers, but the details of each police officer's testimony is unnecessary to our disposition of this appeal.

The defendant was charged under two separate informations. The first information charged him with assault in the second degree with a firearm in violation of General Statutes § 53a-60a and assault in the second degree in violation of General Statutes § 53a-60 (a) (2). The second information charged the defendant with fabricating physical evidence in violation of § 53a-155, conspiracy to fabricate physical evidence in violation of §§ 53a-48 (a) and 53a-155 (a) (2), and falsely reporting an incident in violation of § 53a-180 (a) (3) (C). The jury found the defendant not guilty of the assault counts in the first information and found the defendant guilty of all three counts of the second information. The defendant appealed.

The defendant claims that the prosecutor made numerous improper statements during closing and rebuttal arguments that were so egregious that he was deprived of his due process right to a fair trial under the fifth, sixth and fourteenth amendments to the United States constitution and article first, §§ 8 and 19, of the constitution of Connecticut.[1] Specifically, the

_____

[1] The defendant invokes both the United States constitution and the constitution of the state of Connecticut in support of his claims. He has not, however, provided any independent analysis of the state constitutional claims, and, therefore, we decline to review them. *State* v. *Davis*, 51 Conn.

defendant argues that during the prosecutor's closing and rebuttal arguments, the prosecutor improperly (1) displayed blue tinted sunglasses that had not been admitted in evidence in the case, (2) introduced the concept of the "blue code," (3) offered his opinion that the seasoned officers' testimony was unbelievable, (4) vouched for the credibility of the rookie officers' testimony, (5) blamed the seasoned officers for failing to help the victim, (6) posed hypotheticals to the jurors to encourage them to relate to the victim, (7) displayed a badge that was not part of the evidence and (8) appealed to the jurors' emotions and inflamed the passions of the jurors.

In closing argument, the prosecutor stated that he believed that there were a number of factors showing that there was criminal conduct in this case. He held up[2] a pair of blue tinted sunglasses to demonstrate the concept of a "blue code," whereby police officers "avoid ratting on a brother officer."[3] He proceeded to credit

App. 171, 176 n.10, 721 A.2d 146 (1998).

The fifth amendment to the United States constitution provides in relevant part: "No person shall be . . . deprived of life, liberty, or property, without due process of law . . . ."

The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense."

The fourteenth amendment to the United States constitution provides in relevant part: "No State shall . . . deprive any person of life, liberty or property, without due process of law . . . ."

[2] It is unclear from the record how the blue tinted sunglasses were used, but both parties concede that the prosecutor did show the sunglasses to the jury when referring to the "blue code."

[3] The prosecutor stated: "There are a number of factors that I believe that shows that this was criminal conduct . . . . And the first is the way that some of the police officers testified in this particular case. . . . [T]hey knew what was going on behind the truck. They knew and they didn't want to see it. That's why they came in and testified the way that they did.

"Some of them were wearing these that night: blue tinted sunglasses. A

the testimony of rookie officers and to discredit the testimony of the seasoned officers.[4] The prosecutor next posed a hypothetical to illustrate his opinion that the officers would have seen everything if Wilson, rather than a fellow officer, had been the defendant in the case.[5] He accused the officers who hit Wilson of per-

police officer can do no wrong or at least if he does, they don't want to see it. They are viewing it through blue tinted glasses. A police officer has a code. Don't ask me why, but there's a code, avoid ratting on a brother officer. And some of them did that that night, either consciously or unconsciously. They didn't want to see what was going on behind the truck. The ones that did testif[y], 'well, yeah, there was a struggle and I saw arms but I can't tell who hit whom or what happened.' "

[4] The prosecutor stated: "I ask you this: If the officers had come up on that scene and Mr. Wilson had been on top of one of the officers, do you think any of these officers would have had any difficulty in testifying as to everything that they saw Mr. Wilson do? I submit to you they wouldn't. They would have seen every blow, every move. But they didn't see what Officer Ancona and Officer [Jacqueline] Middleton did that night, except the two rookies, the two rookies who hadn't been steeped in this blue code yet. They both testified as to what they observed.

"[The rookie officer] said that she had her gun out, she observed this pile . . . and she said to herself, you know, something's wrong, it's taking too long to handcuff these people so—or this person, and she holsters her weapon and approaches to put handcuffs on. She took her handcuffs out, she approaches. That's reasonable conduct. That's what should have been done.

"What happens to her? She's pulled back by a more seasoned officer. Why? It's proper to go to the aid of officers who are trying to put someone in custody. Why did Officer Driscoll pull her back from doing that? There's one reason, [be]cause he knew what was going on. They were assaulting Mr. Wilson on the ground. He didn't want [the rookie] involved in that."

[5] The prosecutor stated: "These are officers that are sworn to uphold the law. What did they do? They perverted. I submit to you if it had not been for that snippet of videotape, you in fact would be sitting on the trial of James Wilson and not Michael Ancona. These officers perverted the law. They assaulted this man.

"Obviously, he's not the best citizen we have. And he gave the officers the cause to chase him, to have to run him down, to forcefully have to bring him out of the vehicle. But he did not deserve what happened to him that night, and he certainly didn't deserve to be brought in to court on false charges. And that's exactly what would have happened if we didn't have that videotape.

"As I said in my opening remarks, police officers have a hard job and they deserve our respect, they deserve our cooperation. And when they're in that gray area, they deserve some consideration. How much force to use,

verting the law and abusing their discretion. See foot-note 4. He challenged the jury to "protect those officers that are attempting to properly use that discretion and . . . to punish those officers who do not and who use their badge to commit a crime." In the prosecutor's rebuttal, he discredited the statement and testimony of the defendant. He explained that the jury was to evaluate the totality of the evidence and that even if the state's witnesses were "liars," there was still no reasonable doubt. After emphasizing witness testimony and stating his interpretation of the inferences that could be drawn,[6] the prosecutor blamed the seasoned officers for failing to prevent the assault on Wilson.[7] He further posed a series of rhetorical questions to the jury about the police officers' conduct.[8] To close his rebuttal, the

when to use it, they have to have a certain amount of discretion. But we have to protect those officers that are attempting to properly use that discretion and we have to punish those officers who do not and who use their badge to commit a crime. And I submit to you that that's exactly what happened in this case. And I would ask you to return a verdict of guilty on all the counts."

[6] The prosecutor stated: "And I don't believe for a minute that all these officers were either true to themselves or spoke the whole truth. Perhaps they don't know what it is. Perhaps they're afraid to address it. But look at what they didn't say. There wasn't one officer that got on the stand and said, you know, 'I saw exactly what went on, this guy was struggling, what they did was proper.' They all turned away at one point or another. 'Well, yeah, I saw something going on but I don't know what it was.' 'Yeah, he was struggling but I don't know what exactly he was doing.' "

[7] The prosecutor stated: "None of the other officers had the—I say 'guts,' the wherewithal to get into this and stop the assault. They didn't want to see it. It is a brother police officer. They don't want to know. It's sort of like seeing your brother or sister doing something wrong. You really don't want to have to deal with that. And, unfortunately, that's what came across in their testimony. Do I blame the four? Well, yeah, I do because they take an oath to uphold the law and they should have upheld the law that night and stop what was going on, and they didn't do it. And the rookie is the only one that had enough nerve to confront the situation and say, 'Hey, what are you doing?' You heard his description. Wilson is down on the ground, flat out, and his face to one side, and he gets whacked in the head."

[8] The prosecutor stated: "A lot of the officers that were there that night weren't involved in the search for the truth and when they testified here they weren't involved in the search for the truth. I'm still naive enough to

prosecutor stated: "There's a monument in Washington that's set up that has about fourteen [thousand] or fifteen thousand plaques on it of officers who died in the line of duty. They died to protect us and they died to honor this, their badge. What those officers did that night is a disgrace. It's a disgrace to their badge. Don't let them get away with it."

After the jury was excused, the defense attorney objected to the prosecutor's use of the badge and his distracting the jury from the issue. The defense attorney argued that the prosecutor's statements were "prejudicial and objectionable and [could not] be cured by an instruction."[9] The prosecutor argued that the statements were proper. The court stated that the prosecutor's remarks "fell within fair comment" and did not

think that that's what trials are all about, trying to find out the truth. I think collectively you can use these witnesses' testimony to determine what happened that night. And if this was proper police procedure, why isn't it in these reports? You'll have Officer [Jacqueline] Middleton's report. You'll have Officer [Hugh] O'Callaghan's report. You can see the threads in here, they're all the same, that Wilson was hurt going down, that he resisted, that he swung, that he punched Officer O'Callaghan. It didn't happen.

"And if he wasn't assaulted that night, why did these officers disgrace their badges by filing false reports, by becoming involved in a criminal conspiracy to cover this up? And to have a man who decidedly was not innocent, but he was not guilty of assaulting a police officer as they described it, why would they have this innocent man arrested on a charge that he didn't commit, and get the wheels of justice grinding against him if what they did was not criminal that night?"

[9] The defendant objected and stated: "I object to [the prosecutor] displaying his badge and essentially putting these jurors as the representatives of the community at large. The jurors may not be asked to protect the community or to serve as judicial officers. They're here to decide the guilt of this individual. And saying that somehow the impact of this case will help preserve the integrity of our society and of law enforcement I think is *prejudicial and objectionable and cannot be cured by an instruction.*

"The Court: Response?

"[Prosecutor]: I think it's proper argument, Your Honor. I asked them to believe that what the officers did that night was a disgrace to their badge, and if they believe the evidence, it was.

"The Court: I think it fell within fair comment. I'm not going to take any further action."

sustain the objection. The state argues that the defendant failed to preserve all of his claims on appeal. The defendant argues that all of his claims were preserved because his objection that the statements could not be cured by an instruction constituted a motion for a mistrial.[10] The defendant fails to cite support and we do not know of any for his proposition that an objection stating that the prosecutor's statements were "prejudicial and objectionable and [could not] be cured by an instruction" constitutes a motion for a mistrial.

"The failure to object to certain arguments at trial often is an indication that counsel did not view the remarks as so prejudicial that his client's right to a fair trial was seriously jeopardized. . . . Counsel might make a tactical decision not to object to a marginally objectionable argument because he or she does not want to draw the jury's attention to it or because he or she wants to later refute that argument." (Internal quotation marks omitted.) *State* v. *Dillard*, 66 Conn. App. 238, 249, 784 A.2d 387, cert. denied, 258 Conn. 943, 786 A.2d 431 (2001). Here, the defendant failed to object to the prosecutor's closing argument. His objection focused on the rebuttal arguments of the prosecutor. We conclude that the defendant failed to preserve properly the first six claims and, therefore, we do not review them individually.[11] The objection was sufficient, however, to preserve for our review the defendant's claims

[10] The defendant requested in his reply brief that his unpreserved claims be reviewed under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). We repeatedly have stated that a reply brief is an improper venue for such a claim. *State* v. *Fisher*, 57 Conn. App. 371, 379 n.9, 748 A.2d 377, cert. denied, 253 Conn. 914, 754 A.2d 163 (2000). Furthermore, under the circumstances, we note that it is unnecessary to do so.

[11] We note that based on our standard of review, we must review the trial as a whole. Although the defendant's first six claims are unpreserved for our review individually, we must review the trial as a whole and, therefore, consider the prosecutor's comments in determining whether the actions challenged in the defendant's preserved claims were prejudicial in light of the whole trial.

that the prosecutor improperly displayed a badge and appealed to the jurors' emotions and inflamed the passions of the jurors.

"[Our Supreme Court has] previously acknowledged that prosecutorial misconduct can occur in the course of closing argument. . . . Such argument may be, in light of all of the facts and circumstances, so egregious that no curative instruction could reasonably be expected to remove [its] prejudicial impact. . . . To review a claim of prosecutorial misconduct during closing argument, we ask whether the prosecutor's conduct so infected the trial with unfairness as to make the resulting conviction a denial of due process." (Citations omitted; internal quotation marks omitted.) *State* v. *Mills*, 57 Conn. App. 202, 205, 748 A.2d 318, cert. denied, 253 Conn. 914, 915, 754 A.2d 163 (2000). "The burden on the defendant is to show that the prosecutor's remarks were prejudicial in light of the entire proceeding. . . . The fairness of the trial and not the culpability of the prosecutor is the standard for analyzing the constitutional due process claims of criminal defendants alleging prosecutorial misconduct." (Citations omitted; internal quotation marks omitted.) *State* v. *Butler*, 55 Conn. App. 502, 508, 739 A.2d 732 (1999), aff'd, 255 Conn. 828, 769 A.2d 697 (2001). "[I]mproper summation results in a denial of due process when the improper statements cause substantial prejudice to the defendant." (Internal quotation marks omitted.) *State* v. *Oehman*, 212 Conn. 325, 336, 562 A.2d 493 (1989).

First, we determine whether the prosecutor's conduct was improper. The defendant's first preserved claim is that the prosecutor improperly displayed a badge that had not been admitted into evidence during the prosecutor's rebuttal arguments. We agree.

It is well settled that "[a] prosecutor, in fulfilling his duties, must confine himself to the evidence in the

record. . . . [A] lawyer shall not . . . [a]ssert his personal knowledge of the facts in issue, except when testifying as a witness. . . . Statements as to facts that have not been proven amount to unsworn testimony, which is not the subject of proper closing argument." (Citations omitted; internal quotation marks omitted.) *State* v. *Williams*, 41 Conn. App. 180, 185, 674 A.2d 1372, cert. denied, 237 Conn. 925, 677 A.2d 950 (1996).

We conclude that the prosecutor failed to confine himself to the evidence in the record. During the prosecutor's rebuttal argument, he improperly displayed a badge that was not evidence in the case. He improperly made statements as to facts that had not been proven when he referred to a monument with the names of fourteen [thousand] to fifteen thousand police officers who died to "protect us and they died to honor this, their badge. What those officers did that night is a disgrace." Furthermore, the prosecutor improperly asserted his personal opinion that what the police officers did was a disgrace. The use of the badge and reference to the monument were not subjects of proper closing argument.[12]

The defendant's second preserved claim is that the prosecutor improperly diverted the attention of the jury by appealing to the jurors' emotions. Specifically, the defendant argues that the prosecutor attempted to transform the trial from a case about assault and fabri-

---

[12] The state argues that when the prosecutor's comments are viewed in context, it is clear that he was utilizing the police badge as "descriptive shorthand" for the law. We do not agree. The concept of dramatic shorthand was applied where a prosecutor used colloquial phrases like "hunt," "attack" and "dirt" to describe the defense investigator uncovering evidence that impeached a witness' credibility and defense counsel's use of such impeachment evidence at trial. See *State* v. *Chasse*, 51 Conn. App. 345, 359, 721 A.2d 1212 (1998), cert. denied, 247 Conn. 960, 723 A.2d 816 (1999). Although prosecutors are generally given leeway in their closing and rebuttal arguments, here, we conclude that the use of items that were not in evidence went beyond dramatic shorthand.

cation of evidence into an opportunity for the jurors, as the community's representatives, to send a message to all police officers. We agree.

"A prosecutor may not appeal to the emotions, passions and prejudices of the jurors. . . . [S]uch appeals should be avoided because they have the effect of diverting the jury's attention from [its] duty to decide the case on the evidence. . . . When the prosecutor appeals to emotions, he invites the jury to decide the case, not according to a rational appraisal of the evidence, but on the basis of powerful and irrelevant factors which are likely to skew that appraisal." (Citation omitted; internal quotation marks omitted.) *State* v. *Mills*, supra, 57 Conn. App. 209.

We conclude that the prosecutor improperly appealed to the emotions, passions and prejudices of the jurors, thereby attempting to divert their attention from deciding the case on the evidence against the defendant. The defendant was the only police officer on trial. The prosecutor's closing and rebuttal arguments, however, were not limited to comments about the defendant's actions. The prosecutor's arguments continually referred to, and focused on, other police officers involved in the incident and law enforcement in general. See footnotes 7 through 9 and 12. The prosecutor's rebuttal statement regarding a monument and fourteen thousand or fifteen thousand officers who "died to protect us" and to honor their badge was a blatant attempt to divert the jurors' attention and to appeal to their emotions, passions and prejudices by challenging the jurors not to "let *them* get away with it." (Emphasis added.) When the defendant objected to the prosecutor "essentially putting these jurors as the representatives of the community at large," the prosecutor's response was that he "asked them to believe that what *the officers* did that night was a disgrace to *their* badge, and if they believe the evidence, it was." (Emphasis added.) Even

the prosecutor's response focused on the police officers as a group, rather than the individual defendant. The prosecutor further attempted to distract the jury by using melodramatic language, by referring to a historical monument and by giving a hypothetical that had no basis in the evidence of the case. The prosecutor was attempting to color the jurors' minds with such emotion that they would consider it their duty to convict the defendant, regardless of the evidence. These comments could well have served to undermine the neutrality of the jury by distracting the jury's attention to either irrelevant factors or to matters of emotion and thereby divert the jury's attention from the issues in the case.

We next determine whether the prosecutor's improper conduct caused substantial prejudice to the defendant. "When a verdict is challenged on the basis of the prosecutor's allegedly prejudicial remarks, the defendant bears the burden of proving the remarks prejudicial in light of the whole trial." (Internal quotation marks omitted.) *State* v. *Chasse*, supra, 51 Conn. App. 353. "In determining whether prosecutorial misconduct was so serious as to amount to a denial of due process, [our Supreme Court] . . . has focused on several factors. Among them are the extent to which the misconduct was invited by defense conduct or argument . . . the severity of the misconduct . . . the frequency of the misconduct . . . the centrality of the misconduct to the critical issues in the case . . . the strength of the curative measures adopted . . . and the strength of the state's case." (Internal quotation marks omitted.) *State* v. *Mills*, supra, 57 Conn. App. 205–206. With these six factors as our guide, we now review whether the prosecutor's improper conduct caused substantial prejudice and denied the defendant a fair trial.

Viewing the trial as a whole, including the prosecutor's remarks that were the subject of the defendant's unpreserved claims, we conclude that the prosecutor's

summation arguments were so egregious that the defendant was deprived of a fair trial. First, the record in this case discloses numerous instances of misconduct during summations that were in no way invited by the conduct or argument of the defense. Next, the improper conduct was severe and frequent as demonstrated by the fact that the prosecutor displayed extraneous items, including the blue tinted sunglasses and a badge, and introduced the concept of the "blue code" in his summation arguments. The prosecutor continued on this improper course by offering his opinion that the seasoned officers' testimony was unbelievable, that the rookie officers' testimony was believable and that the seasoned officers were responsible for failing to help the victim. He also posed hypotheticals involving extraneous facts and suggestions to the jurors to encourage them to relate to the victim. Furthermore, the improper comments directly addressed the critical issue in this case, the credibility of the witnesses. The state's case relied primarily on the credibility of the witnesses. Moreover, the trial court failed to provide any additional curative measures beyond the general instruction regarding the fact that closing arguments are not evidence. Accordingly, we conclude that the egregious prosecutorial misconduct so infected the trial with unfairness as to make the resulting conviction a denial of due process.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.