STATE OF CONNECTICUT *v.* EUGENE OEHMAN
(13195)

PETERS, C. J., SHEA, CALLAHAN, GLASS, and HULL, Js.

Argued April 5—decision released August 1, 1989

*James W. Bergenn,* with whom, on the brief, was *Linda L. Yoder,* for the appellant (defendant).

*Susan C. Marks,* assistant state's attorney, for the appellee (state).

SHEA, J. After a jury trial, the defendant was convicted of murder in violation of General Statutes § 53a-54a.[1] In this appeal he claims that: (1) the trial court erred in refusing to allow him to elicit testimony, during cross-examination, of possible bias on the part of a witness for the state; and (2) the conduct of the state's attorney during closing argument deprived him of his constitutional right to a fair trial. We find no reversible error.

From the evidence presented the jury could reasonably have found the following facts. On July 28, 1986, at approximately 6:39 a.m., the body of the victim, John Lyons, was found lying across the front seat of his automobile, at the intersection of Milton and Grand Streets, in the city of West Haven. An autopsy revealed that

---

[1] General Statutes § 53a-54a provides in part: "(a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person . . . ."

the victim's death was caused by five gunshot wounds, resulting in injury to the heart, lungs and intestines. Inspection of the victim's automobile, by members of the West Haven police department, revealed that: (1) the windshield wipers were in operation and the dashboard lights were on; (2) there were three expended .380 caliber shell casings inside the vehicle; (3) the defendant's fingerprints were located on the outer portion of the vehicle's trunk; and (4) there was a piece of paper above the passenger side sun-visor, on which was written "white V.W. Rabbit, 293," identifying a vehicle registered to the defendant.

Two young girls, delivering newspapers, noticed the victim's automobile and saw a dark haired man, wearing blue clothing,[2] standing outside the door on the driver's side. One of the girls saw the man in the blue clothing put his hands on the "top" of the victim's car. The girls heard noises like five firecrackers, heard a person in the victim's automobile scream, and then saw the man in the blue clothing get into a blue car and rapidly drive away. The defendant owned both a blue Datsun and a white Volkswagen.

In January, 1986, the defendant began an extramarital affair with the wife of the victim, seeing her once or twice each week until June, 1986. The defendant informed his own wife of this affair and told her that he wanted to obtain a divorce. In early June, in response to an inquiry by the victim concerning the duration of the affair between the defendant and his wife, the defendant visited the victim at his home. At this meeting the victim told the defendant to stay away from his house and to leave his children alone. In

---

[2] One girl described this clothing as a blue suit, while the other said that the person was wearing blue pants and a blue shirt. The defendant was seen at approximately 7:10 a.m., wearing blue jeans and a blue striped shirt, watching the news on television.

June or July, 1986, the defendant told a co-worker that he was engaged in an affair with the victim's wife and that he was in the process of obtaining a divorce. The defendant asked this co-worker how he should go about purchasing a gun.

On July 24, four days before the victim's death, Jason Chiello, as the result of an advertisement he had placed in the Bargain News, sold a .380 caliber handgun to an individual identifying himself as "George Best." Chiello and two other persons, present at the time of the sale, identified the defendant as the purchaser of this handgun. Chiello provided the police with empty shell casings that had been expended, during an earlier test-firing session, from the weapon sold to the defendant. Ballistics tests revealed that these shell casings and those found in the victim's automobile had been ejected from the same weapon.

Also on July 24, Stephen Prindle, a firearms dealer, sold a customer one box of .380 caliber ammunition. In accordance with recordation requirements, he asked the purchaser for his driver's license and, thereafter, entered the identification information in an ammunition sales logbook. The next morning, Prindle discovered that his store had been broken into and that the ammunition sales logbook had been taken. A ladder, found outside the window that had been used to gain entry into the shop, was identified as being similar to one that was discovered missing from the defendant's place of employment. From an array of photographs, Prindle identified the defendant as the purchaser of the ammunition, although he was "not one hundred percent sure" of his identification. Prindle remembered, however, that the purchaser's first name was "Eugene," and that the letters "H," "O," and "E" were at the beginning of the last name.

On July 29, the day after the victim's death, the defendant was interviewed at the West Haven police station. The defendant told police officers that: he had never been to the victim's house; he did not know if the victim's wife had been engaged in an extramarital affair; he had never had any contact with the victim; and he did not know the victim's wife other than as a result of their being co-workers. The defendant testified on his own behalf at trial and admitted, during cross-examination, that he had lied when making those statements to the police.

## I

The defendant first claims that by preventing him from eliciting, during cross-examination, evidence of possible bias on the part of a witness for the state, the trial court impermissibly restricted his constitutionally guaranteed right of confrontation.[3]

During cross-examination by the defendant, Prindle testified that, in addition to himself, one person worked at his firearms store as a paid employee. Defense counsel then asked whether Prindle had "any other persons who might help [him] out who [weren't] paid." The state objected to this question on the basis of relevance, whereupon counsel for the defendant stated that he was attempting to show bias on the part of Prindle. During an offer of proof, conducted outside the presence of the jury, Prindle testified that a member of the West Haven police department occasionally helped him in his store. Prindle also stated that he had conducted business with "perhaps two or three" members of the West Haven police department on a regular basis, and with "quite a few" members of the same department "[o]ver

---

[3] The sixth amendment to the United States constitution, as applied to the states in *Pointer* v. *Texas,* 380 U.S. 400, 403, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965), provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."

a period of time." After the defendant had elicited the names of several such customers, the state again objected to the introduction of this line of testimony, claiming that it was irrelevant and that no connection had been shown between the officers named and the investigation into the victim's death. Defense counsel argued that "part of [Prindle's bias] might be the fact that he does business with the West Haven Police Department, be it that they be actually involved in this investigation here or not." The trial court sustained the state's objection and noted the defendant's exception.

"Cross-examination to elicit facts tending to show motive, interest, bias and prejudice is a matter of right and may not be unduly restricted." *State* v. *Wilson,* 188 Conn. 715, 720, 453 A.2d 765 (1982). "[A] major reason underlying the constitutional confrontation rule is to give a defendant charged with crime an opportunity to cross-examine the witnesses against him." *Pointer* v. *Texas,* 380 U.S. 400, 406–407, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965); *Douglas* v. *Alabama,* 380 U.S. 415, 418, 85 S. Ct. 1074, 13 L. Ed. 2d 934 (1965). It has been well "recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Davis* v. *Alaska,* 415 U.S. 308, 316, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974); *State* v. *George,* 194 Conn. 361, 481 A.2d 1068 (1984), cert. denied, 469 U.S. 1191, 105 S. Ct. 963, 83 L. Ed. 2d 968 (1985). "To comport with the constitutional standards embodied in the confrontation clause the defendant in exercising his right of cross-examination must be allowed to 'expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness.' " *State* v. *Wilson,* supra, quoting *Davis* v. *Alaska,* supra, 318. "Although the scope of cross-examination

rests generally within the discretion of the trial court, the preclusion of all inquiry upon a particular subject matter tending to show bias is erroneous." *State* v. *James,* 211 Conn. 555, 573, 560 A.2d 426 (1989).

Despite the trial court's preclusion of all inquiry on the subject, the state argues that, since there was no connection shown between the officers named by Prindle and the investigation of this case, the evidence offered was irrelevant to the existence of possible bias on the part of Prindle. We do not agree that such a connection is a prerequisite to the introduction of evidence from which jurors might infer that a witness for the state is either biased in favor of police officers in general, or, in particular, biased in favor of members of the police department whose investigation resulted in the defendant being charged with a criminal offense. "Partiality, or any acts, relationships or motives reasonably likely to produce it, may be proved to impeach credibility." C. McCormick, Evidence (3d Ed.) § 40, p. 85; see C. Tait & J. LaPlante, Connecticut Evidence § 7.20.1; cf. *State* v. *Hernandez,* 204 Conn. 377, 382, 528 A.2d 794 (1987); *State* v. *Fritz,* 204 Conn. 156, 162, 527 A.2d 1157 (1987) (when important testimony from police officers is anticipated, such that a juror might reasonably be more, or less, inclined to credit their testimony, questions concerning whether a juror would have such an inclination are proper during voir dire).

We find error in the trial court's ruling barring cross-examination of Prindle concerning his business dealings with various members of the West Haven police department. The defendant's attempt to show that Prindle was biased in favor of the police because of these dealings was precluded by the court's ruling. While, in the opinion of the trial court, the evidence sought to be presented may have been not particularly

persuasive, its weight was a matter properly to be resolved by the jury and was not a basis for its exclusion.

We conclude, nevertheless, that the trial court's erroneous ruling was harmless beyond a reasonable doubt. "The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt." *Delaware* v. *Van Arsdall,* 475 U.S. 673, 684, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986); *State* v. *Milner,* 206 Conn. 512, 529, 539 A.2d 80 (1988). Our resolution of this question involves consideration of "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." *Delaware* v. *Van Arsdall,* supra. Applying these factors to the instant case, we conclude that the testimony of Prindle, although damaging to the defendant, was not a very important component of the state's proof of the defendant's guilt beyond a reasonable doubt.

Prindle's testimony, concerning the defendant's purchase of ammunition, was not especially significant to the state's case. Other evidence was presented from which the jurors could reasonably have concluded that the defendant had purchased the murder weapon four days prior to the victim's death. Three witnesses identified the defendant as "George Best," the purchaser of the .380 caliber handgun, and the ballistics tests linked that handgun to the shell casings found in the victim's automobile. With this evidence before the jurors, Prindle's testimony concerning the defendant's purchase of .380 caliber ammunition was not of major

significance. Prindle's testimony, concerning the break-in at his store and the theft of his ammunition sales logbook was far less important than the ballistics evidence linking the shell casings found in the victim's car to the weapon purchased by the defendant. Moreover, this testimony concerning the break-in and theft was partially cumulative of independent evidence that the ladder used to facilitate the break-in had been taken from the defendant's place of employment.

Further, the trial court's ruling did not otherwise prevent the defendant from conducting an extensive cross-examination of Prindle. Even if the jury had been made aware of Prindle's relationship with some members of the West Haven police department as a basis for inferring bias on his part, the verdict undoubtedly would have been the same. We conclude that the trial court's erroneous ruling was harmless beyond a reasonable doubt.

II

The defendant's second claim of error, denial of a fair trial due to prosecutorial misconduct during closing arguments, we also find unpersuasive. The defendant bases this claim upon statements made by the prosecutor characterizing the defendant as a "liar," "coward," "spoiled killer with a gun," and as an individual who "has no principles." The defendant also asserts that the prosecutor improperly vouched for the credibility of several of the state's witnesses, and further, expressed to the jurors his personal feelings about the case. The defendant, having failed to raise any objection at trial, concedes that he did not properly preserve this claim for review, but argues, nonetheless, that he is entitled to relief under the doctrine of *State* v. *Evans*, 165 Conn. 61, 327 A.2d 576 (1973), or the plain error doctrine. See Practice Book § 4185.

Rule 3.4 (e) of the Rules of Professional Conduct provides that a lawyer shall not "[i]n trial, allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence, assert personal knowledge of facts in issue except when testifying as a witness, or state a personal opinion as to the justness of a cause, the credibility of a witness . . . or the guilt or innocence of an accused." Although such invective is wholly unprofessional and has no place in a Connecticut courtroom, we conclude that the comments by the prosecutor characterizing the defendant as a liar, coward, and a person without principles were supported by the evidence presented in this case. The jurors heard the defendant testify concerning numerous lies he had told to various persons both before and after the death of the victim.[4] In this situation, it was certainly permissible for the jurors to infer, and for the prosecutor to argue, that the defendant's prior lies were relevant to the credibility of his testimony at trial. Likewise, we conclude that the prosecutor's characterization of the defendant as a coward was not impermissible in light of evidence that the victim was unarmed and seated in his automobile at the time he was shot. Finally, with ample evidence having been presented concerning the defendant's open and adulterous relationship with the victim's wife, we also conclude that the prosecutor was not out of bounds in arguing that the defendant was lacking in principles.

---

[4] In addition to the defendant's admitted lies to police officers concerning his relationship with the victim and the victim's wife, the defendant also admitted that he had lived at his place of employment, had concealed this fact from his co-workers and superiors, had lied to his superiors about the arrangement and had lied in order to obtain a refund of a security deposit placed on an apartment that he was planning to share with the victim's wife and children.

Nevertheless, we conclude that the prosecutor's comment that the defendant was a "spoiled killer with a gun" went beyond proper argument concerning the evidence presented at trial and was, instead, a pejorative statement, implying the prosecutor's personal opinion of the guilt of the defendant, in violation of Rule 3.4 (e). " 'No man on trial for murder can be officially characterized as a murderer or as "a cold-blooded killer," until he is adjudged guilty of murder or pleads guilty to that charge.' " *State* v. *Couture,* 194 Conn. 530, 562, 482 A.2d 300 (1984), cert. denied, 469 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1985). "But that is not the end of the inquiry. Because the right implicated is the defendant's due process right to a fair trial, we proceed next to an examination of the remarks to determine their likely impact." Id. Our review of the record reveals that the prosecutor's comment was not part of a pattern of strident and repeated misconduct throughout the trial; *State* v. *Williams,* 204 Conn. 523, 540, 529 A.2d 653 (1987); and did not, in and of itself, deprive the defendant of a fair trial. See *State* v. *James,* supra, 590.

We also conclude that the prosecutor made several inappropriate remarks concerning his belief in the credibility of various witnesses. For example, the prosecutor informed the jurors that witnesses for the state were "honest," "very honest," "candid" or "telling the truth." In addition, in response to defense counsel's argument concerning the specific time at which the defendant was seen at his place of employment on the morning of the victim's death, the prosecutor stated to the jurors, "I submit to you [the state's witness is] the one that tells you the truth about sighting the defendant," and further, that he "absolutely believe[d]" the witness.

"The prosecutor may not express his own opinion, either directly or indirectly, as to the credibility of wit-

nesses." *State* v. *Williams,* supra, 541; *State* v. *Boone,* 15 Conn. App. 34, 53, 544 A.2d 217, cert. denied, 209 Conn. 811, 550 A.2d 1084 (1988); *State* v. *Floyd,* 10 Conn. App. 361, 365, 523 A.2d 1323 (1987). While the prosecutor is permitted to comment upon the evidence presented at trial and to argue the inferences that the jurors might draw therefrom, he is not permitted to vouch personally for the truth or veracity of the state's witnesses. "The personal evaluations and opinions of trial counsel are at best boring irrelevancies and a distasteful cliche-type argument. At worst, they may be a vague form of unsworn and irrelevant testimony." *Harris* v. *United States,* 402 F.2d 656, 659 (D.C. Cir. 1968). "The fairness of the trial and not the culpability of the prosecutor is [however,] the standard for analyzing the constitutional due process claims of criminal defendants alleging prosecutorial misconduct." *State* v. *Ubaldi,* 190 Conn. 559, 562, 462 A.2d 1001, cert. denied, 464 U.S. 916, 104 S. Ct. 280, 78 L. Ed. 2d 259 (1983). Thus, "improper summation results in a denial of due process when the improper statements cause substantial prejudice to the defendant." *United States* v. *Modica,* 663 F.2d 1173, 1181 (2d Cir. 1981).

Our review of the prosecutor's summation reveals that his comments that particular witnesses were "telling the truth" or being "honest," "very honest," or "candid," were made immediately prior to a recapitulation of the witnesses' testimony. Although objectionable and improper, these comments did not constitute serious misconduct on the part of the prosecutor. Furthermore, these comments are not a reflection of, nor does the defendant claim, a pattern of prosecutorial misconduct throughout the course of the trial. We conclude, therefore, that these comments "could not reasonably have had any significant effect on the verdict or have risen to the level of a violation of the defendant's constitutional right to a fair trial." *State* v. *James,* supra.

We are much more troubled, however, by the prosecutor's remarks, during his rebuttal argument, concerning his absolute belief in the testimony of one particular witness, as well as his submission to the jury that the same witness was telling the truth. Our review of the record reveals that on the morning of the victim's death, the witness in question saw the defendant at his place of employment at a time that was consistent with the defendant's commission of the murder but still allowed sufficient time for him to complete the drive to his work place. This testimony was contrary to the defendant's testimony as well as that of one of his witnesses, that he had spent the night at his work place and was seen there ten minutes earlier than the time given by the witness for the state. In these circumstances we find the prosecutor's comments concerning the truthfulness of the state's witness to be inexcusable as well as absolutely superfluous in light of the other significant evidence linking the defendant to the victim's death.

Our review of the record also reveals, however, that the prosecutor's comments were occasioned, at least in part, by the actions of defense counsel, who in his own summation directly impugned the truthfulness of one of the state's witnesses, and most significantly, told the jurors that the defendant "never lied to you. He got up on that witness stand and he told the truth." While the actions of defense counsel certainly do not excuse the behavior of the prosecutor, they are to be considered in our evaluation of the prejudice, if any, suffered by the defendant as a result of the comments made by the prosecutor. *State* v. *Williams,* supra, 540.

We also note that the jurors were instructed that "[a]nything that either counsel have said about the facts or evidence should be considered by you only to the extent to which their recollection agrees with yours.

It is only your own recollections of the facts and evidence which should have weight in your deliberations." Taking into consideration the overwhelming strength of the state's case, we are not persuaded that the comments made by the prosecutor resulted in prejudice to the defendant sufficient to warrant a reversal of his conviction. This conclusion is buttressed by the defendant's failure to make any claim of prosecutorial misconduct at trial, or to object to those portions of the prosecutor's summation complained of on this appeal. Accordingly, no further review of this claim is warranted. *State* v. *Evans,* supra.[5]

There is no error.

In this opinion the other justices concurred.

---

[5] We also decline to engage in further review of this claim under the doctrine of plain error, as we conclude that the prosecutor's comments did not constitute one of those "truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." *State* v. *Hinckley,* 198 Conn. 77, 87–88, 502 A.2d 388 (1985).