STATE OF CONNECTICUT *v.* ANDREW ALEXANDER
(AC 15584)

Foti, Lavery and Spear, Js.

Argued March 16—officially released September 1, 1998

*Monte P. Radler*, senior assistant public defender, for the appellant (defendant).

*James M. Ralls*, assistant state's attorney, with whom, on the brief, were *Eugene Callahan*, state's attorney, and *Nancy Dolinsky*, assistant state's attorney, for the appellee (state).

*Opinion*

LAVERY, J. The defendant, Andrew Alexander, appeals from the judgment of conviction, rendered after a jury trial, of sexual assault in the fourth degree in violation of General Statutes § 53a-73a[1] and risk of

---

[1] General Statutes § 53a-73a (a) provides in relevant part: "A person is guilty of sexual assault in the fourth degree when: (1) Such person intention-

injury to a child in violation of General Statutes § 53-21.[2] On appeal, the defendant claims that the state's closing argument (1) impermissibly infringed on his constitutional right to be present during trial and (2) amounted to prosecutorial misconduct depriving the defendant of a fair trial. In addition, the defendant claims that the trial court improperly ruled that one of the defendant's witnesses failed to qualify as an expert, permitted the state's expert witness to vouch for the truthfulness of the victim, prevented the defendant from introducing extrinsic evidence regarding the victim's credibility and imposed sex offender treatment as a special condition of probation in this case. We agree with the defendant that the state's closing argument violated his constitutional right to be present during trial and to a fair trial, and we do not address the remaining claims.

The jury reasonably could have found the following facts. At the time of trial, the victim, C, was twelve years old and in the seventh grade. The victim lived in Stamford with her mother, Kendra, a younger brother and twin sisters. The victim was in the second or third grade when she first met the defendant. The defendant was Kendra's boyfriend and the father of the victim's twin sisters. The defendant met Kendra in the fall of 1989. Kendra became pregnant by the defendant in the summer of 1990, and they agreed that the defendant would become involved as a father to their offspring. Because of his work schedule, the defendant main-

___

ally subjects another person to sexual contact who is (A) under fifteen years of age . . . ."

[2] General Statutes (Rev. to 1991) § 53-21 provides: "Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

tained a residence in New York City. He resided with Kendra primarily on weekends after she became pregnant.

At first, the victim liked the defendant. He was nice to her, took her to a park, gave her money for ice cream and never punished or hit her. About the time the victim was eight, the defendant began to abuse her sexually. He would enter her bedroom at night when the room was dark and, if she was asleep, would touch her to awaken her. The defendant would get into her bed, take off her panties and put his finger into her vagina, which hurt, and felt like a knife cutting into her. When C would tell the defendant to stop, he complied. He would also push up her nightshirt and touch her chest as well.

In February, 1993, during school vacation when C was nine, she went to Massachusetts to visit her paternal grandmother. When her grandmother asked how the defendant was treating her, C said that the defendant did not treat her right and disclosed the abuse to her, saying that it had gone on since she was about eight. On her way back to Stamford, C told her father of the abuse.

On March 2, 1993, C was interviewed by Patricia Nelson of the Stamford Child Guidance Center. An audiotape was made of the interview and played for the jury. In the interview, C stated that the abuse began when she was eight, toward the end of the year. She said that the defendant had rubbed her vaginal area, but she was afraid that the defendant would be angry if she provided more detail and she did not want to get him in trouble. At trial, C explained that her testimony was different from her audiotape interview because "now that you get a chance to think about what happened, it all comes back to you. Most of it does." The

victim also spoke about the abuse with Marie Williams, a social worker at the department of children and families (department).

At trial, the state called the victim's father, Officer Martin Treadway of the Stamford police department, Nelson, Williams, and the victim's grandmother primarily as constancy of accusation witnesses. The state also called Nelson, Williams, and Stephen Spitz, a psychologist and consultant for the department, as expert witnesses. The defendant testified and denied ever abusing the victim. In addition, the defendant elicited character testimony from ten witnesses.

The jury returned a verdict of guilty on both counts. The trial court imposed a total effective sentence of five years, suspended after one year, with five years probation and special conditions. The court denied the defendant's motion to open the judgment and motion to correct sentence. This appeal followed.

The defendant claims that during the state's closing argument the state's attorney impermissibly infringed on his constitutional right to be present during trial and that the closing argument amounted to prosecutorial misconduct depriving him of a fair trial. We will address each of these claims individually and, because we find them dispositive, we will not address the defendant's remaining four claims as it is not likely that they will arise during the new trial. The sentencing claim could arise only in the event of a conviction, and we do not know what the outcome of the new trial will be.

"It is well recognized that the state's attorney 'is not only an officer of the court, like every attorney, but is also a high public officer, representing the people of the State, who seek impartial justice for the guilty as much as for the innocent. In discharging his most important duties, he deserves and receives in peculiar degree the support of the court and the respect of the

citizens of the county. By reason of his office, he usually exercises great influence upon jurors. His conduct and language in the trial of cases in which human life or liberty are at stake should be forceful, but fair, because he represents the public interest, which demands no victim and asks no conviction through the aid of passion, prejudice, or resentment. If the accused be guilty, he should none the less be convicted only after a fair trial, conducted strictly according to the sound and well-established rules which the laws prescribe. While the privilege of counsel in addressing the jury should not be too closely narrowed or unduly hampered, *it must never be used as a license to state, or to comment upon, or to suggest an inference from, facts not in evidence, or to present matters which the jury have no right to consider.' State* v. *Ferrone*, 96 Conn. 160, 168–69, 113 A. 452 (1921)." (Emphasis added.) *State* v. *Satchwell*, 244 Conn. 547, 577, 710 A.2d 1348 (1998) (*Katz, J.*, concurring).

I

The defendant's first claim arising from the state's closing argument and rebuttal argument concerns comments made by the state's attorney about the defendant's presence in the courtroom throughout the trial. Specifically, the defendant claims that the comments made by the state's attorney impermissibly infringed on his constitutional right to be present at trial.

In the state's closing argument to the jury, the prosecutor stated: "Who is best able to fabricate a complicated story designed to sway a jury? Your final decision must ultimately be based on whom you believe, the victim . . . or the defendant, Andrew Alexander. . . . Now, you may recall that all the witnesses were sequestered. And, that was so they couldn't hear what the other witnesses were saying *so they couldn't tailor their testimony to each other's testimony*. So that they

couldn't contradict each other. *But there was one witness who wasn't sequestered. There was one witness who heard everything. And, that was [the defendant],* who has a built-in bias in the outcome of this case by virtue of the fact that he's the defendant." (Emphasis added.) In the state's rebuttal argument to the defendant's closing argument, the prosecutor stated: "When you consider the credibility of the defendant's testimony, keep in mind that of all the witnesses here, he's the most obviously biased and interested one. He's the one who has the motive to distort the truth and *fabricate the story.* Think about it." (Emphasis added.)

The defendant did not object to the prosecutor's remarks during the prosecutor's closing argument or rebuttal argument, but did object to the prosecutor's rebuttal argument after its conclusion and outside the presence of the jury. The defendant did not make the specific objection, however, that he raises on appeal. Thus, the defendant seeks review of this unpreserved claim under the doctrine articulated in *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

Under *Golding,* a defendant can prevail on an unpreserved claim of constitutional error "only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." Id. "The first two conditions are determinations of whether a defendant's claim will be reviewed, and the third condition involves a review of the claim itself." (Internal quotation marks omitted.) *State* v. *Santos,* 41 Conn. App. 361, 364, 675 A.2d 930, cert. denied, 237 Conn. 932, 677 A.2d 1374 (1996). The defendant's claim

is reviewable because the record is adequate for review, and the claim implicates the defendant's fundamental constitutional right to be present during his trial.

"It is well settled that a violation of constitutional magnitude may be established even though there has not been a complete abridgement or deprivation of the right. A constitutional violation may result, therefore, when a constitutional right has been impermissibly burdened or impaired by virtue of state action that unnecessarily chills or penalizes the free exercise of the right. . . . Thus, [w]hatever might be said of [the state's] objectives, they cannot be pursued by means that needlessly chill the exercise of basic constitutional rights. . . . The question is not whether the chilling effect is incidental rather than intentional; the question is whether that effect is unnecessary and therefore excessive. *United States* v. *Jackson*, [390 U.S. 570, 582, 88 S. Ct. 1209, 20 L. Ed. 2d 138 (1968)]." (Citations omitted; internal quotation marks omitted.) *State* v. *Cassidy*, 236 Conn. 112, 126–27, 672 A.2d 899, cert. denied, 519 U.S. 910, 117 S. Ct. 273, 136 L. Ed. 2d 196 (1996).

In *State* v. *Cassidy*, supra, 236 Conn. 112, our Supreme Court held that a defendant's constitutional right to be present throughout his trial was violated by the prosecutor's closing argument.[3] The court stated that "[i]nviting the fact finder to draw an inference adverse to a defendant solely on account of the defendant's assertion of a constitutional right impermissibly

---

[3] The prosecutor in *Cassidy* stated: " 'Now also consider, you notice that the witnesses come in and out and there's no witnesses in court, while the other witnesses are testifying, and that ensures that you're going to hear just that person's version of the story. They're not going to doctor it up to fit the other person's version of the story. There's one witness in this case who heard every other witness testify. He heard the whole story before he told you the story. That means when the defendant took the stand, and I would submit to you that during the three days of trial, hearing all of the witnesses, the defendant had ample time to doctor up his version of the story. He just didn't do a good job of it.' " *State* v. *Cassidy*, supra, 236 Conn. 121–22.

burdens the free exercise of that right and, therefore, may not be tolerated. . . . In arguing to the jury that the defendant had been able to 'doctor up' his testimony simply because, in contrast to the state's witnesses, the defendant had been present during the entire trial, the prosecutor invited the jury to draw an inference adverse to the defendant solely because of the defendant's exercise of his constitutional right to confront the witnesses against him." (Citations omitted.) Id., 127–28.

"The *Cassidy* court also acknowledged the fact that, in choosing to testify, the defendant put his credibility at issue, thereby subjecting himself to critical cross-examination. Accordingly, the court noted that the prosecutor would have been free to challenge the defendant's version of the facts and to argue that the defendant had tailored his testimony to fit the state's case, provided that such an argument was '*linked solely to the evidence and not, either directly or indirectly, to the defendant's presence at trial* [i.e., his exercise of a constitutional right].' *State* v. *Cassidy*, supra, 236 Conn. 128 n.17." (Emphasis added.) *State* v. *Shinn*, 47 Conn. App. 401, 413, 704 A.2d 816 (1997), cert. denied, 244 Conn. 913, 914, 713 A.2d 832, 833 (1998).

The United States Court of Appeals for the Second Circuit also recently addressed this same issue in *Agard* v. *Portuondo*, 117 F.3d 696 (2d Cir. 1997).[4] In *Agard*,

---

[4] In *Agard*, the defendant was convicted of sodomy and weapons possession, and appealed from the denial of his petition for a writ of habeas corpus. "In her summation, the prosecutor referred to Agard as 'the one who had an answer for everything' and stated that '[a] lot of what he told you corroborates what the complaining witnesses told you. The only thing that doesn't is the denials of the crimes. Everything else fits perfectly.' At the end of summation, she stated: 'You know, ladies and gentlemen, unlike all the other witnesses . . . the defendant has a benefit and the benefit that he has, unlike all the other witnesses, is he gets to sit here and listen to the testimony of all the other witnesses before he testifies. [Objection overruled.] That gives you a big advantage, doesn't it. You get to sit here and think what am I going to say and how am I going to say it? How am I going to fit it into

the court held that "it is constitutional error for a prosecutor to insinuate to the jury for the first time during summation that the defendant's presence in the courtroom at trial provided him with a unique opportunity to tailor his testimony to match the evidence. Such comments violate a criminal defendant's right to confrontation, his right to testify on his own behalf, and his right to receive due process and a fair trial." Id., 709. "We therefore hold that the Sixth Amendment right to confrontation prohibits a prosecutor from commenting in summation that a defendant's testimony may be viewed in light of his presence in the courtroom during trial, because such comments violate the defendant's right to be present at trial." Id., 710.

In *State* v. *Shinn*, supra, 47 Conn. App. 401, this court addressed a similar claim involving the state's closing argument.[5] The defendant's unpreserved claim in *Shinn* was that "the state's closing argument to the jury impermissibly burdened his constitutional right to testify in his own behalf." Id., 408. This court held that "[t]he prosecutor in this case, as a consequence of his remarks, invited the jury to draw an adverse inference from the very fact of the defendant's decision to exercise his fundamental right to testify in his own behalf. The remarks were not objectionable because they addressed the content or credibility of the testimony, but because, as was true in *Cassidy*, the comments

the evidence? He's a smart man. I never said he was stupid. . . . He used everything to his advantage.' " *Agard* v. *Portuondo*, supra, 117 F.3d 707.

[5] In *Shinn*, the prosecutor made the following statement: " 'You heard repeated references this afternoon that Mr. Shinn got up and testified. That is his right, if he wants to do that, he has the perfect right to do that. That is up to him. He also has a right not to testify. Obviously, ladies and gentlemen of the jury, he heard evidence during the course of the state's case that he felt was, is strong, and so convincing to you, that he felt obligated to get up there and testify and give you a story. . . . And if he thought . . . that the state's evidence was too weak in this case, why did he decide to get up here and testify? That's for your judgment to consider.' " *State* v. *Shinn*, supra, 47 Conn. App. 408.

directly implicated an important constitutional right of the defendant." Id., 414.

We conclude that the principles established in *Cassidy* and followed in *Shinn*, as well as those enunciated in *Agard*, apply to this case. In this case, the prosecutor argued to the jury that by exercising his constitutional right to be present during trial, the defendant tailored his testimony in response to the testimony that he heard. The prosecutor's statements invited the jury to draw an adverse inference on the defendant's constitutional right to be present during trial.

Although the prosecutor was free to challenge the defendant's version of the facts and even to argue that he had tailored his testimony to fit the state's case, the prosecutor was not permitted to link this argument, *either directly or indirectly*, to the defendant's presence at trial. *State* v. *Cassidy*, supra, 236 Conn. 128 n.17; *State* v. *Shinn*, supra, 47 Conn App. 413. The prosecutor's statement made this impermissible link with the defendant's presence at trial. If the prosecutor had linked this argument solely to the evidence, her argument would not have been objectionable. "Such argument exceeded the bounds of fair comment because it unfairly penalized the defendant for asserting his constitutionally protected right to confront his accusers at trial." *State* v. *Cassidy*, supra, 128–29.

Because the prosecutor's statements in this case linked the defendant's presence at trial with his guilt, the constitutional violation in this case is of the same magnitude as that in *Cassidy, Shinn* and *Agard*. We agree with the Second Circuit decision in *Agard*, in which that court concluded that "a prosecutor's summation remarks noting the defendant's unique opportunity to be present at trial infringe upon that constitutionally guaranteed right. The remarks invite the jury to consider the defendant's exercise of his right to confrontation as evidence of guilt, and therefore penalize him

for exercising that right. The comments, which imply that a truthful defendant would have stayed out of the courtroom before testifying or would have testified before other evidence was presented, force defendants either to forgo the right to be present at trial, forgo their Fifth Amendment right to testify on their own behalf, or risk the jury's suspicion. The Sixth Amendment does not permit those comments." *Agard* v. *Portuondo*, supra, 117 F.3d 709.

Having determined that the prosecutor's closing remarks were improper, the fourth prong of *Golding* requires us to consider whether the state has proved beyond a reasonable doubt that the violation was harmless. "Because the prosecutor's argument impermissibly infringed upon [the defendant's] rights guaranteed under the confrontation clauses of the federal and state constitutions, he is entitled to a new trial on those counts unless the state can establish that the objectionable comments were harmless beyond a reasonable doubt." *State* v. *Cassidy*, supra, 236 Conn. 129. We conclude that the state has failed to meet its burden.

In *Cassidy*, our Supreme Court concluded that "[b]ecause the defendant and the victim were the only witnesses with firsthand knowledge of the pertinent events, the state's case against the defendant rested solely upon the testimony of the victim, which was, in all material respects, uncorroborated. Similarly, the defendant's affirmative contention that he had not engaged in any of the criminal misconduct alleged by the state was based entirely upon his own testimony. The jury's principal task, therefore, was to determine which of these two witnesses to believe, making their credibility decisive to the outcome of the case." Id., 129–30. In *Shinn*, "the defendant and the victim . . . were the only witnesses with firsthand knowledge of the events pertinent to the attempted murder charge. The critical question to be resolved by the jury, therefore, was which of the two eyewitnesses was telling the truth." *State* v. *Shinn*, supra, 47 Conn. App. 417.

The situation in this case is almost identical to the situations described in *Cassidy* and *Shinn*. The state's case rested entirely on the testimony of the victim and the testimony of constancy of accusation witnesses. There was no physical evidence linking the defendant to the alleged abuse. In addition, the jury's principal task was to determine whether to believe the victim or the defendant. Thus, their credibility was crucial to the outcome.

We conclude that because (1) the state's case rested on the uncorroborated testimony of the victim, (2) the relative credibility of the victim and the defendant was critical to the jury's determination of the case, (3) there was no physical evidence of the crimes to assist the jury in that determination and (4) the prosecutor's remarks struck at the heart of the critical issue in a closely contested case, we are not persuaded beyond a reasonable doubt that the jury was not influenced adversely by the prosecutor's improper closing argument. The state has failed to prove that the remarks were harmless beyond a reasonable doubt and, accordingly, the defendant is entitled to a new trial on the fourth degree sexual assault and risk of injury charges.

## II

The defendant next claims that the state's attorney committed prosecutorial misconduct during her closing and rebuttal arguments, depriving the defendant of a fair trial. Specifically, the defendant claims that in addition to the prosecutor's comments concerning his presence in the courtroom during trial, the prosecutor also impermissibly expressed to the jury her personal opinion, invited the jury to draw inferences from facts not in evidence, and appealed to the passion and emotions of the jury.

During the state's closing argument, the defendant objected to the prosecutor's comments concerning the

defendant's continuing to live with the victim's mother and the victim's living in Massachusetts with her grandmother. The trial court instructed the prosecutor to eliminate from her argument any reference to the living arrangements of the defendant or the victim. After the state's rebuttal argument, the defendant objected. The defendant's requests for a mistrial, a curative instruction to the jury and an opportunity to rebut parts of the state's additional argument were denied. The defendant also moved for a new trial, arguing that the prosecutor committed prosecutorial misconduct in her closing argument. The trial court denied the defendant's motion.

Prosecutorial misconduct may occur during closing argument. *State* v. *Williams*, 204 Conn. 523, 539, 529 A.2d 653 (1987). "In analyzing the defendant's claim, we ask whether the prosecutor's conduct so infected the trial with unfairness as to make the resulting conviction a denial of due process. . . . We do not focus alone, however, on the conduct of the prosecutor. The fairness of the trial and not the culpability of the prosecutor is the standard for analyzing the constitutional due process claims of criminal defendants alleging prosecutorial misconduct." (Citations omitted; internal quotation marks omitted.) Id., 539–40.

"In determining whether prosecutorial misconduct was so serious as to amount to a denial of due process, this court, in conformity with courts in other jurisdictions, has focused on several factors. . . . Included among those factors are the extent to which the misconduct was invited by defense conduct or argument; *State* v. *Falcone*, 191 Conn. 12, 23, 463 A.2d 558 (1983); the severity of the misconduct; see *United States* v. *Modica*, 663 F.2d 1173, 1181 (2d Cir. 1981) [cert. denied, 456 U.S. 989, 102 S. Ct. 2269, 73 L. Ed. 2d 1284 (1982)]; the frequency of the misconduct; *State* v. *Couture*, 194 Conn. 530, 562–63, 482 A.2d 300 (1984), cert. denied,

469 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1985); see *State* v. *Doehrer*, [200 Conn. 642, 654, 513 A.2d 58 (1986)]; *State* v. *Palmer*, [196 Conn. 157, 164, 491 A.2d 1075 (1985)]; the centrality of the misconduct to the critical issues in the case; *Hawthorne* v. *United States*, 476 A.2d 164, 172 (D.C. App. 1984); the strength of the curative measures adopted; *United States* v. *Modica*, supra, 1181; *Harris* v. *United States*, 402 F.2d 656, 657 n.1 (D.C. Cir. 1968); *State* v. *Doehrer*, supra, 654; and the strength of the state's case. See *United States* v. *Modica*, supra, 1181; *State* v. *Couture*, supra, 564; see also *State* v. *Glenn*, 194 Conn. 483, 492, 481 A.2d 741 (1984)." (Citation omitted; internal quotation marks omitted.) *State* v. *Satchwell*, supra, 244 Conn. 578–79 (*Katz, J.*, concurring).

"The prosecutor may not express his own opinion, either directly or indirectly, as to the credibility of witnesses. . . . Nor may he express his opinion, directly or indirectly, as to the guilt of the defendant. . . . Such expressions of personal opinion are a form of unsworn and unchecked testimony. . . . These expressions of opinion are particularly difficult for the jury to ignore because of the special position held by the prosecutor. . . . The jury is aware that he has prepared and presented the case and consequently, may have access to matters not in evidence . . . which the jury may infer to have precipitated the personal opinions." (Citations omitted.) *State* v. *Williams*, supra, 204 Conn. 541–44. "Similarly, counsel may not submit to a jury that a witness has testified truthfully. *State* v. *Oehman*, 212 Conn. 325, 336, 562 A.2d 493 (1989). A prosecutor's voucher for the credibility of his witnesses is dangerous primarily because the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence. *United States* v. *Young*, 470 U.S. 1, 18–19, 105 S. Ct. 1038, 84 L. Ed. 2d 1 (1985)."

(Internal quotation marks omitted.) *State* v. *Williams*, 41 Conn. App. 180, 183, 674 A.2d 1372, cert. denied, 237 Conn. 925, 677 A.2d 950 (1996).

"A prosecutor, in fulfilling his duties, must confine himself to the evidence in the record. . . . Statements as to facts which have not been proven amount to unsworn testimony that is not the subject of proper closing argument." (Citations omitted.) *State* v. *Williams*, supra, 204 Conn. 544; see also *State* v. *Williams*, supra, 41 Conn. App. 185.

"A prosecutor may not appeal to the emotions, passions and prejudices of the jurors. . . . We have stated that such appeals should be avoided because they have the effect of diverting the jury's attention from their duty to decide the case on the evidence. . . . An appeal to emotions may arise directly, or indirectly from the use of personal and degrading epithets to describe the defendant. . . . When the prosecutor appeals to emotions, he invites the jury to decide the case, not according to a rational appraisal of the evidence, but on the basis of powerful and irrelevant factors which are likely to skew that appraisal." (Citations omitted; internal quotation marks omitted.) *State* v. *Williams*, supra, 204 Conn. 545–46.

In this case, the prosecutor rendered her opinion, both directly and indirectly, on more than one occasion, on the credibility of the victim's testimony.[6] These personal expressions of opinion, examined in the context

---

[6] Examples of the prosecutor's improper argument are: "You've probably all heard the saying, 'wisdom comes from the mouths of babes.' Well, there's a reason for that saying. Just because we have a twelve year old victim, who was eight at the time the incident occurred, recalling what happened to her when she was eight and nine in front of a room full of strangers, doesn't mean we can't depend on her word. *Because we should depend on her word.*

"And, why? I'll tell you why. Common sense tells you that no one—no one would put herself through such an ordeal if nothing happened." (Emphasis added.)

"[The victim] knew when she came to court she had to tell the truth. *And, that's what she did.*" (Emphasis added.)

of the trial as a whole and in particular in light of the state's closing argument, demonstrate an improper vouching of the state's most important witness, the victim. Further, as previously stated, the critical issue of this case involved the credibility of the defendant and the victim.

The prosecutor also made reference to facts not in evidence.[7] In addition, the prosecutor appealed to the emotions of the jurors.[8] We agree with the defendant that these statements invited the jury to ignore the facts

"Nor did she exaggerate. Nor did she have any motive to lie."

"There's no motive for her to lie."

"[The victim] suffered a lot of negative things after she disclosed. And, *if she was lying, she would have changed her story.* She would have said, 'Look, I don't want to live in Massachusetts with my grandmother. I miss home. I miss my friends. I miss my sisters. I made this whole thing up.' But, she didn't do it. She didn't do it. And, why didn't she do it? *Because she told the truth.*" (Emphasis added.)

[7] Examples of the prosecutor's improper argument in this regard are: "[A] delay in reporting or inconsistencies has nothing to do with whether or not the victim is lying or telling the truth."

"[A]n absence of physical injury indicates nothing."

"Remember, [the victim] said, 'I think it happened in the fall. I was eight.' And how does she remember she was eight? 'Because I didn't know him when I was seven.' *That's how little kids think. They can't make this up.*"(Emphasis added.)

"[Y]ou're supposed to believe that as a result of that comment [the victim] fabricated this whole incident to get back at him. *I don't know of that many eight or nine year olds that are that sophisticated to fabricate a story involving sexual abuse.*" (Emphasis added.)

"And you might recall that [the victim] did—and you will have the tape—and I, too, hope you will listen to the tape again—initially said that the defendant rubbed her vagina. Well, based on that, you wouldn't have a physical examination because rubbing doesn't leave fingerprints. And, you can't always tell even if you had a physical exam if somebody inserted their finger in her vagina, if there had been penetration. And, I think that your common sense will tell you that, even though we didn't have somebody on the witness stand telling you that there can be penetration and you don't have proof of it. Because of the different physical characteristics of an individual." (Emphasis added.)

[8] The prosecutor made the following statements: "Child molesters don't sexually assault their victim in front of witnesses. They wait until they're alone, isolated. They pick out a vulnerable child, such as an eight year old asleep in her bed."

of the case and were so pervasive throughout the state's summation that they infected the fairness of the entire trial.

In determining whether the prosecutor's misconduct rises to a level amounting to a denial of due process, we focus on the factors enunciated in *State* v. *Williams*, supra, 204 Conn. 540. In this case, we do not believe that the misconduct was invited by any conduct or argument of the defense. We believe that the seriousness of the misconduct is reinforced by the frequency of its occurrence during the state's closing argument. The improper comments directly addressed the critical issue in this case, the credibility of the victim and the defendant. There were no curative measures adopted, and the state's case was not particularly strong in that it rested on the credibility of the victim.

In this case, the state's closing argument was so thoroughly infected with improper argument that we cannot say with any reasonable degree of certainty that the jury was not improperly influenced by it. Thus, the state has failed to establish that the improper remarks were

---

"Think of David and Goliath. That's another one on one contact where there was disparity of the size and power of the participants. The same disparity is found in almost every child sexual abuse case. . . . The child, the victim, is small, weak, naive, inarticulate and powerless. And, must convince you people that her body has been violated.

"The defense attacked her with all the weapons they could muster. Words, excuses, alibis, explanations, character witnesses. And, still the truth will triumph because it is the triumph of simplicity over duplicity, of directness over evasion, of naivete over sophistication."

"Well, if you think an eight year old child would fantasize about a fifty year old man coming into her room at night and sticking his finger in her vagina, then you have a right to think that way. But, I know that you don't think that way. Because I know that your common sense tells you that eight year old children don't fantasize about that."

"Well, we know that priests, camp counselors, teachers—they all can be child molesters. Because you can't tell a child molester by the way he looks, or by what he does, or by what other people say about him or her."

harmless. The closing argument of the state clearly violated the parameters of "zealous advocacy" and exemplifies the impermissible behavior described in *State* v. *Satchwell*, supra, 244 Conn. 577–82 (*Katz, J.*, concurring), that will not be tolerated. We conclude, on the basis of the facts of this case, that the defendant was denied a fair trial in violation of his federal and state constitutional rights to due process of law.

The judgment is reversed and the case is remanded for a new trial.

In this opinion SPEAR, J., concurred.

FOTI, J., dissenting. I must respectfully disagree with the majority opinion that the prosecutor (1) impermissibly infringed on the defendant's constitutional right to be present during trial and (2) committed prosecutorial misconduct during her closing and rebuttal arguments, thereby depriving the defendant of a fair trial.

I

I agree that the defendant is entitled to *Golding* review of his unpreserved constitutional claim that comments made by the prosecutor during her closing and rebuttal arguments impermissibly infringed on his right to be present during trial. I do not agree, however, that a constitutional violation clearly exists and clearly deprived the defendant of a fair trial, or that the state has failed to prove harmlessness beyond a reasonable doubt. See *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

In this case, the defendant claims that the following comments by the prosecutor infringed on his right to be present at trial: "Who is best able to fabricate a complicated story designed to sway a jury? Your final decision must ultimately be based on whom you believe, the victim . . . or the defendant . . . . Now, you may recall that all the witnesses were sequestered. And, that

was so they couldn't hear what the other witnesses were saying so they couldn't tailor their testimony to each other's testimony. So that they couldn't contradict each other. But there was one witness who wasn't sequestered. There was one witness who heard everything. And, that was [the defendant], who has a built-in bias in the outcome of this case by virtue of the fact that, he's the defendant. . . . When you consider the credibility of the defendant's testimony, keep in mind that of all the witnesses here, he's the most obviously biased and interested one. He's the one who has the motive to distort the truth and fabricate the story. Think about it." I do not agree with the majority that these comments "linked the defendant's presence at trial with his guilt" and amounted to a constitutional violation "of the same magnitude as that in *Cassidy*, *Shinn* and *Agard*."

In *State* v. *Cassidy*, 236 Conn. 112, 672 A.2d 899, cert, denied, 519 U.S. 910, 117 S. Ct. 273, 136 L. Ed. 2d 196 (1996), our Supreme Court considered a defendant's preserved claim[1] that remarks made by the prosecutor during closing rebuttal argument infringed on his rights to be present at trial and to confront the witnesses against him. The court stated that "[i]nviting the fact finder to draw an inference adverse to a defendant *solely* on account of the defendant's assertion of a constitutional right impermissibly burdens the free exercise of that right and, therefore, may not be tolerated." (Emphasis added.) Id., 127.

In *Agard* v. *Portuondo*, 117 F.3d 696 (2d Cir. 1997), the United States Court of Appeals for the Second Circuit considered a claim similar to that considered by our

---

[1] "At the conclusion of closing arguments, the defendant moved for a mistrial or, in the alternative, for a curative instruction to the jury. [*State* v. *Cassidy*, supra, 236 Conn. 122]." *State* v. *Carter*, 47 Conn. App. 632, 643, 708 A.2d 213, cert. denied, 244 Conn. 909, 713 A.2d 828 (1998).

Supreme Court in *Cassidy*.[2] The court concluded that the prosecutor's summation remarks violated the defendant's sixth amendment right to confrontation. Id., 712. The court stated that "[l]awyers may not raise innuendo relating to bias or credibility from the shadows of unlitigated facts for the first time in their closing arguments. Such tactics prevent rebuttal and cross-examination, which are the engines of the truth-finding process in an adversarial criminal trial. *Without facts in evidence to support an inference of fabrication, such remarks are prejudicial and not at all probative.*" (Emphasis added.) Id., 711. The court noted, however, that a prosecutor is "free . . . to point out that [a defendant] has motive to lie in order to escape incarceration . . . and to remark upon that motive in summation . . . ." Id.

In *State* v. *Shinn*, 47 Conn. App. 401, 408, 704 A.2d 816 (1997), cert. denied, 244 Conn. 913, 914, 713 A.2d 832, 833 (1998), we considered a defendant's unpreserved claim that "the state's closing argument to the jury impermissibly burdened his constitutional right to testify in his own behalf." We concluded that the prosecutor's statements directly linking the defendant's decision to testify with his guilt were improper and resulted in a denial of the defendant's due process rights. Id., 414. We emphasized, however, that the case did not involve "a comment of a prosecutor that relates to the *credibility* of a defendant who takes the stand to testify in his or her own behalf. Rather, [the] case concern[ed] a comment that relates to the fact that a defendant chose to exercise the constitutional right to testify, not to the content of that testimony." (Emphasis in original.) Id., 409–10.

---

[2] As in *Cassidy*, *Agard* involved a preserved constitutional claim. Following the prosecutor's summation, defense counsel moved for a mistrial stating that "[i]t is improper to make comments to the jury that [it] should not believe [the defendant] due to his exercise of his constitutional rights to be present at his trial." (Internal quotation marks omitted.) *Agard* v. *Portuondo*, supra, 117 F.3d 707.

In this case, the focus of the prosecutor's summation to the jury was the relative credibility of the defendant and the victim. In challenging the defendant's credibility, the prosecutor referred to a multitude of factors, including (1) the defendant's status as a sophisticated adult who is in a better position than the minor victim to "fabricate a complicated story designed to sway a jury," (2) the contradictions in the testimony of the defendant and the victim's mother, (3) the defendant's demeanor while testifying, (4) the defendant's statements under oath in a prior court proceeding and (5) the defendant's interest in the outcome of the case. The prosecutor, therefore, did not invite the jury to draw an inference that the defendant fabricated his trial testimony *solely* because he exercised his constitutional right to confront the witnesses against him. See *State* v. *Carter*, 47 Conn. App. 632, 644, 708 A.2d 213, cert. denied, 244 Conn. 909, 713 A.2d 828 (1998); compare *State* v. *Cassidy*, supra, 236 Conn. 127.

In addition, the prosecutor referred to facts in evidence to support an inference that the defendant fabricated his trial testimony—specifically, the contradictions in the testimony of the defendant and the victim's mother regarding whether the defendant had ever entered the victim's bedroom, and the defendant's prior inconsistent statements regarding his address. This type of argument has been approved both by our Supreme Court in *Cassidy* and by the Second Circuit in *Agard*.

Finally, the prosecutor's remarks in this case are unlike those considered by this court in *Shinn*. Here, all of the remarks challenged by the defendant relate to the *credibility* of his testimony and do not directly link his presence at trial with his guilt. Compare *State* v. *Shinn*, supra, 47 Conn. App. 414.

"It is well established that once an accused takes the stand and testifies his credibility is subject to scrutiny

and close examination. *State* v. *Carter*, 189 Conn. 631, 640, 458 A.2d 379 (1983). A defendant cannot both take the stand and be immune from impeachment. . . . An accused who testifies subjects himself to the same rules and tests which could by law be applied to other witnesses. *State* v. *Palozie*, 165 Conn. 288, 298, 334 A.2d 468 (1973)." *State* v. *McClendon*, 199 Conn. 5, 12, 505 A.2d 685 (1986).

The prosecutor's comments during summation properly challenged the defendant's credibility by reference to the evidence adduced at trial. Moreover, unlike in *Cassidy*, the prosecutor's comments did not invite the jury to draw an inference adverse to the defendant *solely* on account of the defendant's assertion of his constitutional right to confront the witnesses against him. I would conclude, therefore, that the defendant has failed to demonstrate that a constitutional violation clearly exists and clearly deprived him of a fair trial.

Even if I were to conclude that the prosecutor's summation remarks were improper, I would not grant the defendant a new trial because the state has established that the remarks were harmless beyond a reasonable doubt. See *State* v. *Carter*, supra, 47 Conn. App. 647.

"In *State* v. *Cassidy*, supra, 236 Conn. 131–32, the court based its decision that the prosecutor's remarks were not harmless on the fact that (1) the state's case rested entirely on the uncorroborated testimony of the victim, (2) the relative credibility of the defendant and the victim was critical to the jury's resolution of the case, (3) there was no independent evidence of the crimes to assist the jury in that determination, and (4) the trial court failed to give a curative instruction as requested by the defendant." *State* v. *Carter*, supra, 47 Conn. App. 647–48.

Although the relative credibility of the defendant and the victim was important to the jury's resolution of

the case, the state's case did not rest entirely on the uncorroborated testimony of the victim. Rather, the state called five constancy of accusation witnesses to support the victim's testimony. In addition, the state adduced testimony from three expert witnesses. Furthermore, unlike in *Cassidy*, the defendant did not seek a curative instruction at the conclusion of closing argument. See *State* v. *Oehman*, 212 Conn. 325, 338, 562 A.2d 493 (1989) (conclusion that prosecutor's comments did not result in prejudice to defendant sufficient to warrant reversal of conviction buttressed by defendant's failure to object to portions of prosecutor's summation complained of on appeal).

Finally, in *Cassidy*, the court's decision "was based, in part, on the fact that the comments by the prosecutor were misleading to the jury because 'it [was] by no means certain that the jurors were . . . aware of the fact that the other trial witnesses were not permitted in the courtroom when not testifying' due to the existence of a sequestration order." *State* v. *Carter*, supra, 47 Conn. App. 643. The court stated that "[t]his information . . . would have at least placed the prosecutor's comments in a fairer, more complete, context." *State* v. *Cassidy*, supra, 236 Conn. 124. In this case, the prosecutor, during summation, clearly and unambiguously stated that "all the witnesses were sequestered."

I would conclude that the allegedly improper comments made by the prosecutor were harmless beyond a reasonable doubt.

II

The majority concludes that the defendant was denied a fair trial in violation of his federal and state constitutional rights to due process of law because the prosecutor, during her summation, improperly (1) rendered her opinion on the credibility of the victim's testimony, (2) made reference to facts not in evidence and (3) appealed to the emotions of the jurors. I disagree.

During her rebuttal argument, the prosecutor commented that the victim has no motive to lie, that she told the truth, and that the jurors "should depend on her word." In addition, the prosecutor offered her opinion as to the lack of physical evidence in the case and characterized the victims of child sexual abuse as "small, weak, naive, inarticulate and powerless." Following the state's rebuttal argument, the defendant requested a mistrial, a curative instruction to the jury and an opportunity to rebut orally the prosecutor's statements. The trial court denied the defendant's requests. The trial court also denied the defendant's motion for a new trial.

"In determining whether a prosecutor's conduct was so egregious as to deny a defendant a fair trial, we note that some leeway must be afforded to the advocates in offering arguments to the jury in final argument. [I]n addressing the jury, [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument. . . . [W]e must review the comments complained of in the context of the entire trial. . . . *State* v. *Villanueva*, 44 Conn. App. 457, 461–62, 689 A.2d 1141 [cert. denied, 240 Conn. 930, 693 A.2d 302] (1997)." (Internal quotation marks omitted.) *State* v. *Abdalaziz*, 45 Conn. App. 591, 605, 696 A.2d 1310, cert. granted on other grounds, 243 Conn. 902, 701 A.2d 334 (1997). "We look to the propriety of the challenged remark and, if the statement was improper, to whether it caused substantial prejudice to the defendant. *State* v. *Oehman*, [supra, 212 Conn. 336]." *State* v. *Santiago*, 45 Conn. App. 297, 303, 696 A.2d 344, cert. denied, 241 Conn. 927, 697 A.2d 362 (1997).

Because the trial court denied the defendant's requests for a mistrial, a curative instruction to the jury and an opportunity to rebut orally the prosecutor's statements, as well as his motion for a new trial, it may

be assumed that the trial court did not consider the remarks to rise to the level of "prosecutorial misconduct." "When a verdict is challenged on the basis of the prosecutor's allegedly prejudicial remarks, the defendant bears the burden of proving the remarks prejudicial in light of the whole trial. *State* v. *Floyd*, 10 Conn. App. 361, 364, 523 A.2d 1323, cert. denied, 203 Conn. 809, 525 A.2d 523, cert. denied, 484 U.S. 859, 108 S. Ct. 172, 98 L. Ed. 2d 126 (1987). The trial court's ruling is entitled to weight because of the vantage point from which it can observe and evaluate the circumstances of the trial. The trial court is in a better position to determine the propriety of the remarks of counsel and whether or not they are harmful. *State* v. *Glenn*, 194 Conn. 483, 493, 481 A.2d 741 (1984)." (Internal quotation marks omitted.) *State* v. *Pouncey*, 40 Conn. App. 624, 635, 673 A.2d 547 (1996), aff'd, 241 Conn. 802, 699 A.2d 901 (1997). "Moreover, we will not disturb the trial court's mistrial ruling unless the challenged remarks have so infected the trial with unfairness as to make the resulting conviction a denial of due process. . . . *State* v. *Castonguay*, 218 Conn. 486, 508, 590 A.2d 901 (1991)." (Internal quotation marks omitted.) *State* v. *Pouncey*, supra, 634–35.

My review of the record reveals that the alleged misconduct was neither intentional nor flagrant and did not rise to the level of substantial prejudice that justifies reversal. The prosecutor's comments were relatively brief, confined to rebuttal argument and not part of a pattern of misconduct. Further, the trial court instructed the jury that the arguments and statements of counsel during summation were not evidence and that it was the jurors' recollection of the evidence that should have weight in their deliberations, rather than what counsel said in final argument.

I would conclude that none of the defendant's claims of prosecutorial misconduct justifies reversal of the

defendant's conviction. The effect of the prosecutor's comments cannot be said to have affected the outcome of the trial or to have so infected the trial with unfairness as to make the defendant's resulting conviction a denial of due process. If the defendant suffered any prejudice it was minimal, and the sanction of reversal is inappropriate.

I would affirm the judgment of the trial court and, therefore, respectfully dissent.