[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL OR FOR A NEW TRIAL
Nature of Proceedings
On June 11, 2001, the defendant, Luis Lopez, moved pursuant to Practice Book §§ 42-51, 42-53, the Fourteen Amendment to the United States Constitution and Article I, § 8 of the Connecticut CT Page 14304 Constitution for a new trial and judgment of acquittal. The defendant was charged with three counts of sexual assault in the third degree in violation of General Statutes § 53a-72a(a)(1)(A). Three counts of risk of injury to a minor in violation of General Statutes § 53-21(2), and in the alternative three counts of sexual assault in the fourth degree in violation of General Statutes § 53a-72a(a)(1)(B).
On February 20, 2001, the defendant was convicted of the three counts of risk of injury to a minor and acquitted on the three counts of sexual assault in the third degree and acquitted on the three counts of sexual assault in the fourth degree. On April 16, 2001 prior to the defendant's sentencing Wilillam M. Bloss filed an appearance in lieu of the defendant's trial counsel. The defendant subsequently filed a single motion entitled "Motion for New Trial and for Judgment of Acquittal." The defendant raises several grounds for the granting of his motion including that the defendant was deprived of the representation of conflict-free counsel at trial, that the verdict was factually inconsistent, that the prosecutor committed misconduct during closing argument, that counsel at trial was ineffective, and that defense counsel at trial was not permitted to cross examine on a previous complaint filed by the victim.
Timeliness of Motions
Defendant filed a document entitled "Motion For New Trial and For Judgment of Acquittal" on June 11, 2001. This document was not filed within 5 days of the verdict in the case. Although the defendant purports to file the motions in the alternative, in fact, the authority for filing the motions is contained in different sections of the Practice Book. A motion for acquittal is found in Practice Book § 42-52 and it provides:
 Unless the judicial authority, in the interest of justice, permits otherwise, a motion for acquittal shall be made within 5 days after. . . a verdict or within any further time the judicial authority allows during the 5 day period.
A motion for a new trial is provided for in Practice Book § 42-54. That section provides:
 Unless otherwise permitted by the judicial authority in the interest of justice, a motion for a new trial shall be made within 5 days after a verdict or finding of guilty or within any further time the judicial authority allows during the 5-day period.
CT Page 14305 It appears to the court that all of the defendant's claims, other than the claim of ineffective assistance of counsel, might be raised under § 42-52 and the court finds that it is in the interest of justice to permit the late filing of the Motion for Acquittal. The court further notes that the ineffective assistance of counsel claim must be raised either by a motion for a new trial or in a petition for Writ of Habeas Corpus. State v. Leecan, 198 Conn. 517, 541 (1981). In addition, there is a specific provision that does not contain time limits which provides for a "petition" for a new trial under General Statutes § 52-270 and requires newly discovered evidence. The court does not find that it is clear on the record that there was ineffective assistance of counsel. Any evaluation of the effectiveness of counsel would require a hearing in the nature of a habeas hearing and expert testimony on the standard of care required. Under these circumstances, mindful of the facts contained in this record, the court does not believe that the interest of justice would be served by the court considering a late filed motion for a new trial which raises the effectiveness of counsel. Accordingly the court will consider defendant's claims, other than the claim of ineffective assistance of counsel, but the court will not consider the defendant's claim of ineffective assistance of counsel.
A. Defendant's Prior Uncharged Misconduct.
The court relied on State v. Kulmac, 230 Conn. 43, 62 (1994) in which the Supreme Court stated:
The are more liberal in admitting evidence of other criminal acts to show common scheme or pattern in sex related crimes than in other crimes.
As pointed out in the State's brief the court stated on the record that in its opinion the pre-offered evidence "would clearly be inadmissible if this were not a sex case. . . . There seems to be special rules for patterns in sex cases that I think are more liberal to the State than they would be in cases of another nature sol will allow the testimony" [2-13-01, Tr. at 56-59] The court was well aware of the fact that the probative value of the evidence must be balanced against the possible prejudice. In the court's opinion, given the standard set out in Kulmac, the court weighed these factors and found them to balance in favor of the State.
 B. Refusal to Permit Cross Examination of the Victim on an Alleged Prior Sexual Assault.
The defendant, relying on State v. Rolon, 257 Conn. 156 (2001) argues that the court was in error in refusing to allow the defense to question the 12 year old complainant about an alleged prior claim of sexual CT Page 14306 touching involving a different assailant. Rolon emphasized the importance of allowing prior claims of sexual assault "for the purpose of showing an alternative source of the victim's sexual knowledge." To do that the defendant must show (1) that the prior acts clearly occurred; (2) that the acts closely resembled those of the present case; (3) that the act is clearly relevant to a material issue; (4) that the evidence is necessary to the defendant's case; and (5) that the probative value of the evidence outweighs its prejudicial effect. Factually the cases are distinguishable. In Rolon the victim was 6 at the time of the alleged assault and 8 at the time of trial. In the present case the victim was 10 at the time of the assault and 12 at the time of trial. The Rolon court's concern with the earlier assault being the basis for the victim's sexual knowledge is far less persuasive with a 12 year old than with an 8 year old. Finally, the prior act complained of in the present case was very much in dispute. The facts before this court did not support the requirement that the prior acts clearly occurred. Accordingly, although the instant case was decided before the decision in Rolon, the court finds nothing in the Rolon decision which would alter its ruling in this regard.
C. Conflict of Interest Claims.
The defendant argues that he was deprived of conflict-free counsel at trial because defense counsel "put himself in the position to be a material defense witness." The victim had made inculpatory statements regarding the defendant's conduct. Prior to trial however, the victim signed a statement recanting her inculpatory statements. The circumstances surrounding the signing of the statement were part of the State's case because the recantation was handwritten on paper that contained defense counsel's letterhead. The victim later testified that she had been forced by her mother and the defendant to sign the statement recanting her inculpatory statements. The State notes that the original letter of recantation was handwritten in the victim's kitchen while the defendant and the victim's mother were present. The defendant argues that the defense counsel met alone with the victim prior to her signing the recantation letter and that he should have been expected to testify concerning the circumstances surrounding the recantation.
The State informed the court, outside of the defendant's presence and off the record, that the defense counsel may intend to testify at trial. The trial judge, in chambers, asked defense counsel if he intended to testify and whether a new attorney should be obtained to represent the defendant. After consideration by defense counsel, he informed the judge that he did not intend to testify on behalf of the defendant.
A defendant's right to counsel under the Sixth Amendment includes the CT Page 14307 right to be represented by an attorney who is free from conflicts of interest. United States v. Kliti, 156 F.3d 150, 153 (2nd Cir. 1998).
In Kliti the Second Circuit held:
 When the trial court knows or reasonably should know of the possibility of a conflict of interest, it has a threshold obligation to determine whether the attorney has an actual conflict, a potential conflict or no conflict. . . . In fulfilling this initial obligation to inquire into the existence of a conflict of interest, the trial court may rely on counsel's representations. . . . If a district court ignores a possible conflict and does not conduct this initial inquiry. reversal of the defendant's conviction is automatic.
Kilti, supra at 153.
However, our Supreme Court has held:
 In the absence of evidence to the contrary, this court may presume that the attorney has performed his ethical obligation to inform his client of any potential conflict.
State v. Cator, 256 Conn. 785, 794 (2001).
In Cator the court went on to hold:
 It is firmly established that the trial court is entitled to rely on the silence of a defendant and his attorney, even in the absence of inquiry, when evaluating whether a potential conflict of interest exists. . . . Absent special circumstances, therefore, trial courts may assume either that [the potentially conflicted] representation entails no conflict or that the lawyer and his clients knowingly accept such risk of conflict as may exist. . . . An attorney [facing a possible conflict] in a criminal matter is in the best position professionally and ethically to determine when a conflict of interest exists or will probably develop in the course of the trial. . . . The scope of a court's inquiry, or the necessity for such inquiry . . . depends on the circumstances, and a court need not necessarily elicit CT Page 14308 a waiver.
Cator, supra at 795.
No conflict existed because defense counsel informed the judge at trial that he did not intend to testify. It was simply defense counsel's trial strategy not to present himself as a witness. In the opinion of the court "the evidence of a specific conflict [was not] sufficient to alert a reasonable trial judge that the defendant's sixth amendment right to effective assistance of counsel [was] in jeopardy." State v. Gaines,257 Conn. 695, 711 (2001).
The defendant argues that the court's initial inquiry should have been on the record. The court is required to hold such an inquiry on the record in one of two situation:
 "(1) When there has been a timely conflict objection at trial; Holloway v. Arkansas, 435 U.S. 475, 488
(1978): or (2) when the trial court knows or reasonably should know that a particular conflict exists. Cuyler v. Sullivan, 446 U.S. 335 (1980)."
State v. Crespo, 246 Conn. 665, 686 (1999).
It is the court's belief that it was entitled to rely on defense attorney's assertion as an officer of the court and that it would be inappropriate to unnecessarily pry into defense strategy. Accordingly it is the court's opinion that there was no duty to conduct an inquiry on the record.
D. Inconsistent Verdicts.
The defendant next claims that the jury returned impermissibly inconsistent verdicts. The jury convicted the defendant on three counts of risk of injury to a minor and acquitted the defendant on six counts of sexual assault. The defendant argues that the verdicts are factually inconsistent. In particular, the defendant points to the judge's answer to a question by the jury in which the judge stated that under the circumstances of the case the charges were identical except that the risk of injury counts carried an additional element to wit that the unconsented touching was likely to impair the health or morals of a minor.
Our Supreme Court has commented on the problem of inconsistency injury verdicts in State v. Stevens, 178 Conn. 649, 656 in the following language: CT Page 14309
 The general rule . . . was set forth by J. Learned Hand in Steckler v. United States . . . and was confirmed by Justice Holmes in Dunn v. the United States. . . . The defendant in Dunn had been indicted on three counts. He was found guilty by the jury on only one count, which, logically, would have required a finding of guilty on the other two. On appeal the government offered an elaborate explanation of the possible reasoning of the jury in an effort to support the consistency of the verdicts. Justice Holmes
declined to adopt the government's theory and answered instead: `consistency in a verdict is not necessary. Each count in an indictment is regarded as if it were a separate indictment.' . . . He went on to state: `That the verdict may have been the result of compromise, or of a mistake on the part of the jury, is possible. But verdicts cannot be upset by speculation or inquiry into such matters.'" [Citations omitted]. . . . It would be anomalous . . . for [a] court to upset a guilty verdict on one count that may reflect the jury's lenity on the ground that it is somehow inconsistent with an acquittal on another count."
Stevens, 653, 656.
 Although factual consistency in a verdict is not necessary. . . verdicts may not be inconsistent as a matter of law or based on a legal impossibility. . . Verdicts are legally inconsistent if "the existence of the essential elements for one offense negates the existence of the essential elements for another offense of which the defendant also stands convicted.' Citations omitted. State v. Bagley, 35 Conn. App. 138, 154 (1994).
The court sees no legal inconsistency in the present case. The risk of injury to a minor count and the sexual assault counts have distinct and different elements. "If the offenses charged contain different elements, then a conviction of one offense is not inconsistent on its face with an acquittal of the other." State v. DeCaro, 252 Conn. 229, 244 (2000).
The jury convicted on the risk of injury counts but acquitted on the sexual assault counts. At the most, this is a factual inconsistency. "Where the verdict could have been one of compromise or mistake, we will CT Page 14310 not probe into the logic or reasoning of the jury's deliberations or open the door to interminable speculation. " Internal quotation marks omitted.State v. Hinton, 227 Conn. 301, 313 (1993).
In determining whether the verdicts were reasonably and logically reached the court must determine if the evidence at trial supported the verdict. Here there was sufficient evidence to convict on risk of injury to a minor. Accordingly, the jury's verdict was reasonably and logically reached.
E. Prosecutorial Misconduct.
The defendant argues that the conviction should be overturned on the grounds that the State improperly commented on the credibility of witnesses. Specifically, the defendant points to three statements that the prosecutor made as being improper: "I assure you that these crimes [pause] that it did happen," "I would submit to you ladies and gentlemen that [what the complainant] testified on the stand to what happened that is the truth," and the defendant claims that the State expressly argued that the defendant lied on the witness stand. The State takes the position that the State's attorney did not improperly comment during closing arguments and, in any event, the State claims that no comments would seriously jeopardize the defendant's right to a fair trial.
In State v. Burton, 258 Conn. 153, 164 (2001) the Supreme Court concluded that:
 In State v. Williams, 204 Conn. 523, 539, 529 A.2d 653
(1987), [the Supreme Court] concluded that, in evaluating a claim of prosecutorial misconduct, we must determine "whether the prosecutor's conduct so infected the trial with unfairness as to make the resulting conviction a denial of due process.'. Factors to consider in this analysis include: (1) the extent to which the misconduct was invited by defense conduct or argument; (2) the severity of the misconduct; (3) the frequency of the misconduct; (4) the centrality of the misconduct to the critical issues of the case; (5) the strength of the curative measures adopted; and (6) the strength of the State's case.
In a similar vein, our Appellate Court in State v. Dumas,54 Conn. App. 780, 788 cert. denied 252 Conn. 903 (1999) stated that in analyzing prosecutorial misconduct the defendant cannot prevail "where the claimed misconduct was not blatantly egregious and merely consisted CT Page 14311 of isolated and brief episodes that did not reveal a pattern of conduct repeated throughout the trial."
Finally, the Appellate Court has held:
 [T]o deprive a defendant of his constitutional right to a fair trial . . . the prosecutor's conduct must have so infected the trial with unfairness as to make the resulting conviction a denial of due process. . . . We do not focus alone, however, on the conduct of the prosecutor. The fairness of the trial and not the culpability of the prosecutor is the standard for analyzing the constitutional due process claims of criminal defendants alleging prosecutorial misconduct.
State v. Hicks, 56 Conn. App. 384, 389-9O (2000).
Comments in the present case are somewhat similar to the comments considered in State v. Oehman, 212 Conn. 325 (1989). The comment, "I assure you that these crimes [pause] that it did happen," is analogous to the comments made in Oehman. The prosecutor then went on in the rest of his closing argument to explain how the evidence, primarily the testimony of the victim and the other state witnesses, supported his contention that the crimes occurred. As in Oehman, the statement was made immediately prior to a recapitulation of the witness' testimony. Accordingly, while it may be true that at least this single statement should not have been uttered by the state's attorney, this comment clearly was not sufficient to deny the defendant constitutional due process. Although it would have been preferable if the state's attorney had refrained from stating "I assure you . . ." the court need not determine whether that statement is improper because it is abundantly clear that the statement is insufficient to have denied the defendant a fair trial.
The prosecutor's comment on the victim's truthfulness came in his rebuttal argument after defense counsel asserted several personal beliefs on how the victim lied to the jury and after defense counsel conveyed to the jury a "time line" of how "I believe these accusations progressed to the present time and how they are intertwined with the events and with what Jessenia wanted to occur" (2/20/01, Tr. 22). Here, in light of defense counsel's closing argument, the prosecutor's rebuttal was not such as to deny the defendant a fair trial.
In addition, the jury received curative instructions. In the charge the jury was told: CT Page 14312
 You are the sole judges of the facts. You are to recollect and weigh the evidence and form your own conclusions as to what the ultimate facts are. . . . The lawyers are not witnesses what they have said in their closing arguments is intended to help you interpret the evidence but is not itself evidence. If the facts as you remember them differ from what the lawyers stated or from what I might state to you from time to time you rely on your own memory and your own memory controls. (2-20-01, Tr. 41-43)
Finally in State v. Alexander, 254 Conn. 290 (2000) the Supreme Court addressed the issue of a prosecutor's comment in closing arguments on the defendant's veracity with the following language:
 . . . by exercising his fifth amendment right to testify on his own behalf, it is axiomatic that the defendant opens the door to comment on his veracity. It is well established that once an accused takes the stand and testifies his credibility is subject to scrutiny and close examination. . . . A defendant cannot both take the stand and be immune from impeachment. . . . An accused who testifies subjects himself to the same rules and tests which could by law be applied to other witnesses. Citations omitted.
 State v. Alexander, 254 Conn. 290, 297-298 (2000).
 CONCLUSION
The court refuses to exercise its discretion to entertain a motion for new trial, based on ineffective assistance of counsel, pursuant to Practice Book § 42-54. Since the issue of ineffective assistance of counsel may be raised only in a habeas proceeding or in a new trial, which in this case would require a post-verdict hearing, the court does not address nor express an opinion on the adequacy of representation. The court does exercise its discretion to consider those issues raised by the defendant which can be reviewed on the record. After thorough review of the matter, the court finds no basis to reject the jury's verdict. The court recognizes that the acquittal on the sexual touching charges are a legitimate consideration for the court in arriving at an appropriate sentence. The court will proceed expeditiously to sentencing in this matter.
By the Court, CT Page 14313
 Kevin E. Booth Judge of the Superior Court